THE PEOPLE *ex rel.* ROBERT SKLODOWSKI *et al.*, Plaintiffs-Appellants, v. THE STATE OF ILLINOIS *et al.*, Defendants and Counterdefendants-Appellees (Judges' Retirement System of Illinois *et al.*, Nominal Defendants and Counterplaintiffs-Appellants).—ILLINOIS RETIRED TEACHERS ASSOCIATION, Intervenor-Appellant, v. THE STATE OF ILLINOIS *et al.*, Defendants-Appellees.

First District (2nd Division)    Nos. 1—93—2951, 1—93—3171, 1—93—3172, 1—93—3173 cons.

Opinion filed August 13, 1996.—Rehearing denied November 22, 1996.—Modified opinion filed November 26, 1996.

Skadden, Arps, Slate, Meagher & Flom, of Chicago (Susan Getzendanner and Kimberley K. Baer, of counsel), for appellants State Employees' Retirement System of Illinois and State Universities Retirement System.

Rudnick & Wolfe, of Chicago (William J. Campbell, Jr., Richard S. Huszagh, and Howard L. Teplinsky, of counsel), for appellant Teachers' Retirement System of Illinois.

Sutterfield & Johnson, P.C., of Effingham (David Sutterfield, of counsel), for appellant Illinois Retired Teachers Association.

Krislov & Associates, Ltd. (Clinton A. Krislov and Jonathan Nachsin, of counsel), and Kevin B. Rogers, both of Chicago, for other appellants.

Roland W. Burris and James E. Ryan, Attorneys General, of Chicago (Rosalyn B. Kaplan and Barbara A. Preiner, Solicitors General, and Jerald S. Post, Assistant Attorney General, of counsel), for appellees.

JUSTICE BURKE delivered the modified opinion of the court upon denial of partial rehearing:

This case involves an action based on an alleged failure to contribute to, and on the alleged impairment of, retirement pension benefits and contractual rights by the State of Illinois and certain state officials.

Plaintiffs Robert Sklodowski, Thomas Hanahan, Sandee Hanahan, Susan Lillis, Robert Negronida and Mark D. Warden, counterplaintiffs, the State Employees' Retirement System (SERS), the State Universities' Retirement System (SURS), the Teachers' Retirement System of the State of Illinois (TRS) (retirement systems), and intervenor, the Illinois Retired Teachers Association (intervenor), appeal from an order of the circuit court dismissing plaintiffs' second amended complaint, counterplaintiffs SURS' and TRS' amended counterclaim, counterplaintiff SERS' counterclaim and intervenor's complaint for a writ of *mandamus* against defendants, the State of Illinois and its officials, Jim Edgar (Governor), Philip Rock (President of the Senate), Michael Madigan (Speaker of the House of Representa-

tives), Dawn Clark Netsch (Comptroller) and Patrick Quinn (Treasurer), based on the separation of powers doctrine.

On appeal, plaintiffs, counterplaintiffs and intervenor argue that (1) the constitutional separation of powers doctrine does not prevent the judiciary from ordering state officials to perform nondiscretionary duties; (2) they have a contractual interest under the state constitution in the financial integrity of the state retirement systems; and (3) the federal and state contracts clauses prohibit impairment of pension contract rights. Counterplaintiffs SERS, SURS and TRS also contend that the constitutional legislative supremacy clause does not prohibit their claims. Plaintiffs also contend that their second amended complaint stated (1) a valid claim against defendants for breach of fiduciary duty and (2) a viable claim for a civil rights violation. For the reasons set forth below, we affirm in part and reverse in part.

In 1963, the State of Illinois created five retirement systems: SERS, SURS, TRS, the General Assembly Retirement System, and the Judges Retirement System of Illinois. Each retirement system is governed by a separate section of the Illinois Pension Code (Pension Code) (40 ILCS 5/1—101 et seq. (West 1992)). In 1989, Illinois Public Act 86—273, effective August 23, 1989, added the following language to sections 2—124, 14—131(f), 15—155(a), 16—158(b) and 18—131(2) of the Pension Code (Ill. Rev. Stat. 1991, ch. 108$^1$/2, par. 1—101 et seq. (now 40 ILCS 5/1—101 et seq. (West 1992))), which pertain to the five retirement systems:

> "Starting with the fiscal year which ends in 1990, the State's contribution [to the retirement systems] shall be increased incrementally over a 7 year period so that by the fiscal year which ends in 1996, the minimum contribution to be made by the State shall be an amount that, when added to other sources of employer contribution, is sufficient to meet the normal cost and amortize the unfunded liability over 40 years as a level percentage of payroll, determined under the projected unit credit actuarial cost method. The State contribution, as a percentage of the applicable employee payroll, shall be increased in equal increments over the 7 year period until the funding requirement specified above is met." Pub. Act 86—273, eff. August 23, 1989.

Plaintiffs subsequently filed a class action in behalf of the participants of the retirement systems against defendants and naming as nominal defendants the board of trustees of the retirement systems, seeking a writ of *mandamus*, declaratory judgment and an enforcement order based on defendants' alleged failure to comply with Public Act 86—273. Plaintiffs alleged in their second amended

complaint that defendants' "actions (specifically the State's failure to contribute as required under P.A. 86—273) and the individual Defendants' past and continuing improper budgeting (Governor) and appropriation (President of Senate and Speaker of the House), contrary to that required by P.A. 86—273, constitute unlawful impairment of the participants' contractual rights under Article 13, § 5 of the 1970 Illinois Constitution [pension protection clause]." Ill. Const. 1970, art. XIII, § 5. Plaintiffs further alleged that the State, in failing "to act in accordance with P.A. 86—273," breached its fiduciary duties under the Illinois Pension Code (40 ILCS 5/1—109(d) (West 1992)) and that defendants' "actions in budgeting, appropriating and contributing different lesser amounts than those required by P.A. 86—273 constitute the passage of law impairing obligations of contract, in violation with the Contract Clause of the United States Constitution" (U.S. Const., art. I, § 10) "and/or an invalid attempt to grant the State freedom from making its contribution required by P.A. 86—273," thereby violating article I, section 16, of the Illinois Constitution (Ill. Const. 1970, art. I, § 16). Plaintiffs' second amended complaint also included a count against the individual defendants alleging that they deprived plaintiffs of property under color of state law in violation of 42 U.S.C. § 1983 (1988).

Intervenor's motion to intervene was granted on October 2, 1992. On December 21, 1992, counterplaintiffs SURS and TRS answered plaintiffs' second amended complaint and filed an amended counterclaim against the Governor, Comptroller and Treasurer alleging impairment of pension benefits and impairment of contractual rights in violation of article I, section 10, of the United States Constitution (U.S. Const., art. I, § 10) and article I, section 16, of the Illinois Constitution (Ill. Const. 1970, art. I, § 16). On the same day, intervenor filed a three-count complaint against the State, Governor, Comptroller and Treasurer alleging that they impaired the pension benefits and contractual rights to benefits of participants in SURS and TRS in violation of the federal and state constitutions.

On February 19, 1993, the State, Governor, Senate President and House Speaker moved to dismiss plaintiffs' second amended complaint, arguing that the trial court lacked jurisdiction over the State pursuant to the doctrine of sovereign immunity, the doctrine of separation of powers prevented the court from compelling the General Assembly to appropriate public funds; the doctrine of separation of powers prevented the trial court from compelling the Governor to budget a certain amount of money because budgeting is an executive function; and a writ of *mandamus* was not available because "plaintiffs do not seek to compel State officials to perform ministerial

duties." On the same day, the Governor moved to dismiss the amended counterclaim filed by counterplaintiffs SURS and TRS, and the Governor and the State moved to dismiss intervenor's complaint. Both motions were substantially similar in content to the Governor's and State's motions to dismiss plaintiffs' second amended complaint.

On August 6, 1993, the trial court granted the motions to dismiss plaintiffs' second amended complaint, SURS' and TRS' amended counterclaim and intervenor's complaint, finding that the separation of powers doctrine prevented the trial court from "directing the Legislature to take any specific conduct."

On August 23, 1993, counterplaintiff SERS filed a motion for leave to answer plaintiffs' second amended complaint and to file a counterclaim and motion to substitute counsel. On August 31, the trial court granted SERS' motion, but dismissed its answer and counterclaim based on the separation of powers doctrine.

On September 2, 1993, SERS, SURS and TRS moved for reconsideration of the August 6 and August 31 orders dismissing SURS' and TRS' amended counterclaim and SERS' counterclaim, respectively. On September 3, intervenor moved for reconsideration of the trial court's August 6 order dismissing its complaint. On the same day, the trial court denied all of the motions for reconsideration. This appeal followed.

On April 16, 1996, defendants filed a "Renewed Motion to Dismiss Appeals as Moot"[1] with this court, arguing that Public Act 86—273, upon which complainants rely, was repealed by Public Act 88—593. Public Act 88—593 provides for continuing automatic appropriations of required State contributions to the retirement systems to bring the pension systems to a 90% funding ratio by the end of fiscal year 2045. In response, plaintiffs, counterplaintiffs and intervenor argued that all beneficiaries who entered their respective retirement systems between August 23, 1989, the date Public Act 86—273 became effective, and August 22, 1994, the date it was repealed, have a vested contractual right to enforce the terms of Public Act 86—273 pursuant to article XIII, section 5, of the Illinois Constitution. Plaintiffs, counterplaintiffs and intervenor further argue that the public interest exception to the mootness doctrine permits this court to review the dismissal of their complaints and counterclaims despite the fact that Public Act 86—273 has been repealed.[2]

In addition, plaintiffs and counterplaintiff TRS argue that Public

---

[1]Defendants had previously filed a motion to dismiss plaintiffs' appeal as moot on September 12, 1994, which this court denied on October 27, 1994.

[2]In support of their public interest exception argument, plaintiffs refer

Act 88—593 became effective on August 22, 1994, and was therefore in effect when this court first denied defendants' original motion to dismiss as moot and, therefore, this court should again deny the motion because the circumstances have not changed.[3] We have taken defendants' renewed motion to dismiss with this case.

■ The standard of review of a trial court's order dismissing a complaint is *de novo*. *Anastos v. Chicago Regional Trucking Ass'n*, 250 Ill. App. 3d 300, 618 N.E.2d 1049 (1993). In considering the dismissal of an action, a reviewing court must interpret the allegations of the complaint in a light most favorable to the plaintiff and, if it appears that no set of facts from the pleadings could be proved that would entitle the plaintiff to relief, the dismissal must be affirmed. *Turner v. Rush Medical College*, 182 Ill. App. 3d 448, 537 N.E.2d 890 (1989), *appeal denied*, 127 Ill. 2d 643, 545 N.E.2d 133 (1989).

I

Before reaching plaintiffs', counterplaintiffs' and intervenor's arguments, we first address the State's contention that the trial court lacks subject matter jurisdiction over it pursuant to the State Lawsuit Immunity Act (745 ILCS 5/1 (West 1992)) and that "[t]o the extent

---

this court to the 1995 Annual Report of the Supreme Court to the General Assembly, at 1, which comments on the State-funded retirement systems as follows:

"In 1994 the General Assembly approved legislation to begin to address the serious problem of the under funding of the five state-financed retirement systems. The legislature took the significant step of establishing a long term solution to achieve a 90% funding ratio by the end of State fiscal year 2045. This plan also commits the state to continuing appropriations of the required contributions to the General Assembly, Judges, State Employees, State Universities, and State Teachers retirement systems.

The General Assembly is to be commended for addressing this *ongoing problem.* However, the Auditor General recently reported that unfunded liabilities for the five state-financed retirement systems grew by $2.48 billion last year, to a record $19.5 billion. *Because of other continuing difficulties related to these systems, the General Assembly is strongly urged to accelerate the schedule for reaching actuarial soundness.*" (Emphasis added.)

[3]Plaintiffs also argue that Public Act 88—593 is itself unconstitutional because its reduced level of funding impairs the contract rights of the beneficiaries and violates article XIII, section 5, of the Illinois Constitution and article I, section 16, of the United States Constitution. We do not consider this argument because Public Act 88—593 was enacted after plaintiffs', counterplaintiffs' and intervenor's appeal to this court and, therefore, review of that act is not before us.

\*\*\* that the pleadings attempt to assert a cause of action against the State of Illinois, they had to be dismissed." Plaintiffs counter that they sought "by *mandamus* to compel public officials to perform clear and mandatory duties and that is not an action against the State." Plaintiffs further maintain that since "the Court of Claims has no equity jurisdiction and cannot award the *mandamus* and declaratory relief Plaintiffs seek," the trial court is the proper forum to grant this relief. Counterplaintiffs SERS and SURS argue that questions involving constitutionality of the State defendants' actions are not barred by the doctrine of sovereign immunity.

■ Pursuant to the State Lawsuit Immunity Act (745 ILCS 5/1 (West 1992)), "[e]xcept as provided in the 'Illinois Public Labor Relations Act' \*\*\* or '[An Act] to create the Court of Claims \*\*\*,' the State of Illinois shall not be made a defendant or party in any court." The Illinois Court of Claims Act (705 ILCS 505/8(a) (West 1992)) provides that the Court of Claims shall have exclusive jurisdiction to hear "[a]ll claims against the state founded upon any law of the State of Illinois, or upon any regulation thereunder by an executive or administrative officer or agency."

In *Board of Trustees of Community College District No. 508 v. Burris*, 118 Ill. 2d 465, 472, 515 N.E.2d 1244 (1987), a community college district's board of trustees brought an action against the State Comptroller and the Director of the Department of Commerce and Community Affairs seeking reimbursement from the Comptroller for the cost of providing veterans' scholarships or declaratory judgment requiring the Director to notify the General Assembly of the State's failure to fully fund the veterans' scholarship program. Plaintiff there argued that it was entitled to reimbursement under the State Mandates Act for funds expended on veterans' scholarships. The *District 508* court found that because plaintiff's action "challenges the defendants' interpretation of their obligations under the Mandates Act," plaintiff's "suit is not one against the State, but is one that contests the conduct of State officials in allegedly proceeding in violation of [the] law." *District 508*, 118 Ill. 2d at 473.

■ Here, as in *District No. 508*, plaintiffs' cause of action, by their own admission, is not against the State but is one against the other named defendant officials regarding their interpretation and performance of statutory obligations. Accordingly, the claims against the State itself are barred. We find, however, that the proper basis for dismissal of the State as a party is the doctrine of sovereign immunity and not, as the trial court found, separation of powers. *Williams v. Board of Education*, 222 Ill. App. 3d 559, 584 N.E.2d 257 (1991).

## II

Plaintiffs, counterplaintiffs and intervenor first contend that the trial court erred in dismissing their complaints and counterclaims based on the separation of powers doctrine because defendant officials' obligations under Public Act 86—273 to fund the retirement systems are mandatory and it is the judiciary's responsibility to ensure compliance with the law by the executive and legislative branches. Counterplaintiffs SERS and SURS assert further that, without judicial oversight, Public Act 86—273 is meaningless and unenforceable.

Defendants argue that the relief plaintiffs, counterplaintiffs and intervenor seek can be accomplished only through enacting appropriations, which is a legislative prerogative, and the preparation of a budget, which is an executive prerogative; therefore, the judiciary cannot compel the exercise of these functions in a particular manner because of the separation of powers doctrine.

■ ■ "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. Once rights are created by the constitution or statute, "[i]t is within the realm of judicial authority to assure that the action of the members of the executive branch does not deprive [individuals] of an institution of rights conferred by statute or by the Constitution." *Dixon Ass'n for Retarded Citizens v. Thompson*, 91 Ill. 2d 518, 533, 440 N.E.2d 117 (1982). A writ of "*mandamus* is discretionary and is appropriate only where there is a clear right to the requested relief, a clear duty of the [defendant] to act, and clear authority in the [defendant] to comply with the writ." *Orenic v. Illinois State Labor Relations Board*, 127 Ill. 2d 453, 467-68 (1989). "[W]hile *mandamus* will not lie to direct the manner in which the discretion is to be exercised, it is available to compel the performance of an action which requires the exercise of discretion or even compel the exercise of discretion itself." *Rock v. Thompson*, 85 Ill. 2d 410, 416, 426 N.E.2d 891 (1981) (opinion of Goldenhersh, C.J., joined by Ward and Clark, JJ.); see also *Fergus v. Marks*, 321 Ill. 510, 517-18 (1926) (finding that where an officer "may be compelled by *mandamus* to act, the court in such case is simply compelling action and not the manner of action").

■ Here, plaintiffs, counterplaintiffs and intervenor sought to have the judiciary order defendant officials by *mandamus* to comply with Public Act 86—273, which already provides, as enacted by the legislature, a level of funding of the retirement systems over a seven-year period. Plaintiffs do not seek to have the judiciary compel the manner or means in which defendants perform their duties to achieve

compliance. In fact, "[w]here a statute categorically commands the performance of an act, so much money as is necessary to pay the command may be disbursed without any explicit appropriation." *Antle v. Tuchbreiter*, 414 Ill. 571, 581, 111 N.E.2d 836 (1953). Additionally, as more fully discussed below, plaintiffs, counterplaintiffs and intervenor have a clear contractual right to the State contributions provided by Public Act 86—273, which is thus a mandatory rather than a discretionary duty upon the State, and defendant officials thus have a duty and authority to act to comply with that Act; as plaintiffs point out, section 2(a) of article VIII of the Illinois Constitution (Ill. Const. 1970, art. VIII, § 2(a)) requires the Governor to submit a budget in accordance with state law and section 8 of article IV (Ill. Const. 1970, art. IV, § 8) requires defendants "Speaker of the House of Representatives and the President of the Senate *** to certify that the procedural requirements for passage have been met" for each bill that passes both houses. Because it is the responsibility of the judiciary to assure that the actions of the executive and legislative branches do not deprive individuals of rights conferred by statute or the constitution (*Dixon Ass'n*, 91 Ill. 2d 518, 440 N.E.2d 117), the trial court therefore was not barred by the separation of powers doctrine from considering, based on the merits of plaintiffs', counterplaintiffs' and intervenor's claims, whether to issue a writ of *mandamus* to compel defendant officials to comply with Public Act 86—273. Accordingly, we find that the trial court erred in dismissing plaintiffs' second amended complaint, counterplaintiffs SURS' and TRS' amended counterclaim, counterplaintiff SERS' counterclaim and intervenor's complaint.

### III

Plaintiffs, counterplaintiffs and intervenor next maintain that defendants' failure to adequately fund the state retirement systems violates the pension protection clause of the Illinois Constitution. Ill. Const. 1970, art. XIII, § 5. They further argue that Public Act 86—273 became part of the State's contract with the retirement system participants when the legislature amended the Pension Code. Defendants counter that the pension protection clause does not "endow" beneficiaries "with a contractual right to enforce the funding mechanism" of Public Act 86—273, which they assert does not provide *continuing* appropriations, but protects them only from the State's failure to pay benefits to beneficiaries "when they are due."

■ Section 5 of article XIII of the Illinois Constitution of 1970 (Ill. Const. 1970, art. XIII, § 5) provides that "[m]embership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof,

shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired [pension protection clause]." This clause has been interpreted as creating "*contractual protection for all pension plans.*" (Emphasis added.) *Buddell v. Board of Trustees, State Universities Retirement System,* 118 Ill. 2d 99, 102, 514 N.E.2d 184 (1987). The provisions of the Pension Code are "actual terms" of the contractual relationship established in section 5. *Kerner v. State Employees' Retirement System,* 72 Ill. 2d 507, 514, 382 N.E.2d 243 (1978). In construing a statute, a court's "objective is to ascertain and give effect to the legislative intent as determined from the necessity or reason for the enactment and the meaning of the words employed." *Kerner,* 72 Ill. 2d at 512. It is well settled that the legislature in passing a law is presumed not to have "intended a meaningless act." *Niven v. Siqueira,* 109 Ill. 2d 357, 367, 487 N.E.2d 937 (1985). The law assumes that the legislature in enacting new law is "aware of judicial decisions concerning prior and existing law and legislation." *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund,* 95 Ill. 2d 211, 218, 447 N.E.2d 394 (1983).

Here, in 1989 the legislature was aware of the magnitude of the retirement systems' underfunding and, as a result, enacted Public Act 86—273. It is clear that the legislature, by enacting Public Act 86—273, intended to bind itself to the obligation of paying these funds to the retirement systems. Moreover, when the legislature amended the Pension Code to add the requirement of an *increase* in State contributions over a seven-year period to each of the five retirement systems pursuant to Public Act 86—273 in order to attain full funding, those requirements became part of the State's contract with the pension beneficiaries. Beneficiaries in each system provided consideration for this added term of the contract by continuing to render their services to the State and to pay their own contributions.

This is not a situation like that in *People ex rel. Illinois Federation of Teachers v. Lindberg,* 60 Ill. 2d 266, 326 N.E.2d 749 (1975), upon which defendants rely, where participants in several teachers' pension funds challenged the governor's item reduction of fiscal appropriations to the funds, arguing that the Pension Code establishing a contractual relationship between themselves and the State obligated the State to fulfill its funding commitments. The *Lindberg* court found that the statutory language relied upon by the plaintiffs was made a part of the Pension Code *before* the adoption of the 1970 Constitution, at a time when such pensions were uniformly not considered as creating any contractual right, and which, the *Lindberg* court determined, did not evidence the legislature's intent to establish a vested contractual right. *Lindberg,* 60 Ill. 2d at 275. In so

finding, the *Lindberg* court concluded that "had the legislature intended to establish a present contractual relationship ***, it would have been a simple matter to so state." *Lindberg*, 60 Ill. 2d at 275. The court lastly stated: "Plaintiffs have asserted that the respective pension systems are inadequately funded. The question of the specific fiscal appropriations necessary to meet these deficiencies is one which *** should be directed to the legislature." *Lindberg*, 60 Ill. 2d at 277.

In the present case, the legislature, pursuant to section 5 of article XIII, which established an enforceable contractual relationship between pension beneficiaries and the State, did in fact do just as the *Lindberg* court indicated it had the power to do by specifically enacting Public Act 86—273, which promised pension beneficiaries an increase in State contributions over a seven-year period for the specific purpose of fully funding the admittedly underfunded retirement systems. In other words, the legislature provided for the "how much" and "when" as to funding the retirement systems. Plaintiffs here did not claim that the legislature must make specific appropriations but, rather, that, by enacting Public Act 86—273, the legislature failed to make contributions pursuant to the formula it established to require it to make contributions to the funds during a seven-year period in order to fully fund the pension systems. We further observe that Public Act 86—273 does not contain any limiting language, as *possibly* Public Act 88—593 (40 ILCS 5/1—103.3 (West 1994)) does, which defendants cite to in support of their motion to dismiss these appeals as moot, to indicate that the legislature's commitment expressed in Public Act 86—273 is a "goal." Like the situation in *Lindberg*, the legislature could have included some limiting language to indicate that its intent was not to obligate itself to a level of funding over the seven-year period, but it did not do so. To accept defendants' position would result in allowing the legislature to unilaterally change the terms of its contract once the time for compliance with the former terms is required. Such a practice could continue indefinitely, thus making each law (contract) meaningless.

We further note that our supreme court's recent decision in *McNamee v. State of Illinois*, 173 Ill. 2d 433 (1996), upon which defendants rely and which was filed subsequent to the issuance of the opinion in this case, is distinguishable from the case at bar. In *McNamee*, the plaintiffs alleged that an amendment changing the method of computing the annual amount required to amortize the unfunded accrued liability of police pensions diminished and impaired their pension benefits because the new method would "allow municipalities to contribute lower initial annual contributions to the police pension funds, thereby making the funds less secure" (173

Ill. 2d at 436) and that they had a "protected contractual right [pursuant to section 5, article XIII] to the 'benefit' of the more secure fund created by the prior funding method" (173 Ill. 2d at 439). The *McNamee* court, in interpreting the intent of the framers of our constitution, found that section 5 of article XIII creates an enforceable contractual right to pension benefits, but does not "control the manner in which state and local governments fund their pension obligations" (173 Ill. 2d at 446). Because the plaintiffs did not allege that the amendment diminished their right to receive pension benefits, the *McNamee* court held that the amendment did not violate section 5, article XIII. The court also found that "[t]the word 'impaired' is meant to imply and to intend that if a pension fund would be on the verge of default or imminent bankruptcy, a group action could be taken to show that these rights should be preserved" (173 Ill. 2d at 446-47), and that the plaintiffs had not alleged that the new funding method would impair their benefits by placing the fund on the verge of default or imminent bankruptcy.

■ In the present case, however, the legislature, by enacting Public Act 86—273, has imposed upon itself a greater obligation beyond its contractual obligation set forth in section 5, article XIII, by in fact requiring that it incrementally *increase its contributions to the pension funds* over a seven-year period to fully fund the pension funds—to pay its outstanding *debt* to the pension funds—rather than to be obligated only to pay *benefits to participants* as they become due, just as the *Lindberg* court indicated the legislature had the power to do. In other words, although the intent of the framers of the constitution was not to control the funding of the pension funds, the legislature, by enacting Public Act 86—273, promised the pension funds a level of funding, notwithstanding that the Act itself does not set forth the means by which the legislature was to perform its promise. Thus, it is this obligation that the plaintiffs here seek to compel defendants to perform; plaintiffs do not seek to dictate the specific means by which defendants are to comply with the promised funding under Public Act 86—273. See *Dadisman v. Moore*, 181 W. Va. 779, 384 S.E.2d 816 (1988) (holding that the Governor has a ministerial duty to prepare a budget consistent with the West Virginia Constitution and statutes); *Weaver v. Evans*, 80 Wash. 461, 478, 495 P.2d 639, 649 (1983) (holding that the legislature's adoption of a systematic method of funding "becomes one of the vested contractual pension rights flowing to members of the system"). We additionally note that, unlike the plaintiffs in *McNamee*, plaintiffs, counterplaintiffs and intervenor here have all in one form or another alleged that the financial status of their separate pension funds is in a precarious state and that there will be no funds from which to pay benefits by

2008 or 2009. Whether this status is the equivalent of "on the verge of default or bankruptcy" must be determined by the trial court, but as pleaded, plaintiffs, counterplaintiffs and intervenor have stated a recognized cause of action.

Here, Public Act 86—273 provided a formula for contributions to the pension funds. Plaintiffs, counterplaintiffs and intervenor had a vested contract right in the funding provisions under Public Act 86—273 from the date Public Act 86—273 became effective until August 22, 1994, when it was repealed by Public Act 88—593. It is clear, from *McNamee*, that beneficiaries need not wait until they have been denied benefits before they can make a claim that their benefits have been impaired. Plaintiffs, counterplaintiffs and intervenor adequately alleged in their respective complaints and counterclaims that, through defendants' underfunding of the retirement systems, their benefits have been impaired. Accordingly, the trial court erred in dismissing plaintiffs' second amended complaint, counterplaintiffs SURS' and TRS' amended counterclaim, counterplaintiff SERS' counterclaim and intervenor's complaint.

IV

Plaintiffs, counterplaintiffs and intervenor also contend that defendants' failure to budget, contribute and appropriate the proper amounts to the systems, as required by Public Act 86—273, impaired their contract rights and violated article I, section 10, of the federal constitution (U.S. Const., art. I, § 10) and article I, section 16, of the state constitution (impairment of contracts clauses) (Ill. Const. 1970, art. I, § 16).

Article I, section 10, of the United States Constitution provides that "[n]o State shall *** pass any *** Law impairing the Obligation of Contracts." U.S. Const., art. I, § 10. Article I, section 16, of the Illinois Constitution provides that "[n]o *** law impairing the obligation of contracts or making an irrevocable grant of special privileges or immunities, shall be passed." Ill. Const. 1970, art. I, § 16.

We first note that the trial court did not make any finding on this issue. However, based on our determination above, that plaintiffs, counterplaintiffs and intervenor have a contractual right in the funding provision of Public Act 86—273, as well as their allegations in their respective complaints and counterclaims that through defendants' underfunding of the retirement systems, by failing to budget, appropriate and contribute funds, their benefits have been impaired, we find that they have stated a recognized cause of action. Accordingly, the trial court erred in dismissing plaintiffs' second amended complaint, counterplaintiffs SURS' and TRS' amended counterclaim, counterplaintiff SERS' counterclaim and intervenor's complaint.

■ Lastly, the parties' following arguments need not be addressed by this court for the reasons stated: (1) plaintiffs argue that they have standing to bring this action even though all retirement system benefits are presently being paid by the State because "system bankruptcy is not a predicate for standing." Defendants, however, do not challenge plaintiffs on this "issue" on appeal; (2) counterplaintiffs SERS, SURS and TRS argue that they have a responsibility to act in behalf of their members and that they are entitled to bring claims in favor of their participants and beneficiaries. Defendants do not challenge counterplaintiffs on this "issue" on appeal and, moreover, the trial court did not address this issue; (3) plaintiffs contend that defendants breached their fiduciary duties under the Pension Code; and (4) that they also violated plaintiffs' property rights protected by 42 U.S.C. section 1983 when they budgeted, appropriated and contributed lesser amounts to the retirement systems than required by law. The trial court did not make any finding regarding these two claims and we therefore do not address them.

For the reasons stated, we affirm the circuit court's dismissal of plaintiffs', counterplaintiffs' and intervenor's claims against the State of Illinois based on sovereign immunity; we reverse the court's dismissal of plaintiffs', counterplaintiffs' and intervenor's claims against all other defendants; and we remand this cause for further proceedings consistent with the views expressed herein. We also deny defendants' renewed motion to dismiss this case as moot.

Affirmed in part and reversed in part; cause remanded.

HARTMAN, P.J., and SCARIANO, J., concur.