No. 2--96--1306 

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

JOSEPH STRATMAN,           ) Appeal from the Circuit Court

          ) of Kane County. )

Plaintiff-Appellant, )

) No. 89--L--46

v. )            

)

ROBERT BRENT, ) Honorable

) R. Peter Grometer,

Defendant-Appellee. ) Judge, Presiding.

________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

The plaintiff, Joseph Stratman, appeals the trial court's granting of the defendant's, Robert Brent's, motion on the pleadings, motion to dismiss, and summary judgment in this action for slander.  The trial court granted the defendant's motion on the pleadings and motion to dismiss based on section 2--201 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1987, ch. 85, par. 2--201 (now 745 ILCS 10/2--201 (West 1994))).  The trial court granted the defendant's motion for summary judgment on count II of the plaintiff's third amended complaint based on a release signed by the plaintiff.  We reverse.

The issues raised in this appeal concern the legal sufficiency of the plaintiff's third amended complaint and the defendant's motions directed against that complaint.  The following facts are taken from the record.  The plaintiff worked as a police officer for the City of Aurora from December 1977 to June 1985.  During that period, the defendant was the police chief of the City of Aurora.  In January and August 1987, the plaintiff applied for positions with the United Stated Drug Enforcement Agency (DEA) and the Bureau of Alcohol, Tobacco, and Firearms (BATF), respectively.  The Federal Bureau of Investigation (FBI) conducted a background check of the plaintiff for the DEA, and the Department of the Treasury (DT) conducted a background check for the BATF  Both the FBI and the DT interviewed the defendant regarding the plaintiff's employment with the City of Aurora.

Count I of the plaintiff's third amended complaint alleges that the defendant made the following statements about the plaintiff to the DT:

"a. That the plaintiff was involved in a fatal shooting on March 20, 1979 and subsequent to that shooting, the plaintiff declined any offers of counseling;

b. That the plaintiff was given the nickname [']Code Red['] which is the Aurora Police Department unofficial designation for mentally disturbed person;

c. That the plaintiff became a loner soon after the shooting and that the plaintiff became unpredictable and displayed an increasingly negative attitude, in fact a pervasive negative attitude;

d. That the plaintiff became incapable of handling stress and that the defendant was relieved when the plaintiff resigned;

e. That the defendant was keeping a close eye on the plaintiff prior to his resignation and monitoring him with the idea of finding just cause to fire him and was glad to see the plaintiff leave;

f. That the defendant would not rehire the plaintiff and if the plaintiff attempted to return to the Aurora Police Department, the defendant would go to any length to prevent his return and would subject the plaintiff to every psychological screening available;

g. That the defendant could have [a] department wide mutiny if the plaintiff returned;

h. The other officers would not work with the plaintiff;

i. That the defendant would not recommend the plaintiff for employment with the United States Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms."

Count II of the plaintiff's third amended complaint alleges that the defendant made the following statements about the plaintiff to the FBI:

"a. That the plaintiff had been involved in an incident wherein he shot a burglar and after the shooting, the plaintiff did not have, or ask for any counseling;

b. That before the plaintiff left the department and a considerable time after the shooting, the plaintiff began to act strangely;

c. That the plaintiff was nicknamed [']Code Red['] by his  fellow officers and that [']Code Red['] is the Aurora  Police Department code word for a person acting crazy;

d. That although the official file on the plaintiff indicates that he was eligible for rehire, the defendant would not rehire the plaintiff without careful psychiatric study and testing;

e. That the plaintiff should be given psychological testing before the final consideration for hiring be given."

The plaintiff also alleged that the defendant's statements were false, the defendant had limited contact with the plaintiff during the plaintiff's employment, the defendant had no personal knowledge upon which to base his statements, and that the defendant failed to conduct any investigation to verify the plaintiff's alleged conduct, behavior, and performance.  Further, the plaintiff alleged that, before the defendant made the slanderous statements to the FBI and the DT, the defendant told the FBI during another interview that "he had no reason to question the plaintiff's honesty, loyalty, or trustworthiness, *** and he would recommend the plaintiff for employment with a law enforcement agency."  Neither the DEA nor the BATF offered employment to the plaintiff.

In the defendant's amended answer to the plaintiff's third amended complaint, the defendant admitted that he had been interviewed as part of the federal government's background investigation of the plaintiff.  However, the defendant denied that he made slanderous statements about the plaintiff.  The defendant asserted the affirmative defenses of (1) truth; (2) common-law absolute government official privilege; (3) statute of limitations; (4) the execution of a release by the plaintiff; and (5) immunity pursuant to section 2--201 of the Tort Immunity Act.  The trial court denied the plaintiff's motion to strike the defendant's affirmative defenses.  The defendant attached a copy of the alleged release to his answer.  The defendant filed a motion for judgment on the pleadings and a motion to dismiss based on sections 2--615(b) and (e) of the Code of Civil Procedure (735 ILCS 5/2--615(b), (e) (West 1994)), alleging that the plaintiff failed to state a cause of action because the defendant's alleged statements were protected expressions of opinion and capable of innocent construction.  The defendant also filed a section 2--619(a)(9) (735 ILCS 5/2--619(a)(9) (West 1994)) motion to dismiss, alleging immunity based on section 2--201 of the Tort Immunity Act.  In addition, the defendant filed a motion for summary judgment only on count II of the plaintiff's third amended complaint based on the alleged release.  The defendant attached a copy of the release to the motion for summary judgment.  The plaintiff filed a letter signed by the defendant commending the plaintiff on his involvement with a burglary incident and a letter signed by the defendant praising the plaintiff for his service with the department upon the plaintiff's resignation.

The trial court granted the defendant's motion on the pleadings and his motion to dismiss based on immunity and granted the defendant's motion for summary judgment based on the release, but denied the defendant's motion to dismiss based on innocent construction.  The trial court then dismissed the plaintiff's third amended complaint with prejudice.  This timely appeal followed.  The plaintiff filed a motion to strike portions of the defendant's reply brief.  That motion was taken with this appeal.

The plaintiff argues that the trial court improperly dismissed his complaint based on section 2--201 of the Tort Immunity Act (Ill. Rev. Stat. 1987, ch. 85, par. 2--201).  The plaintiff claims that the defendant's alleged act is not immune under this provision because it was not a discretionary act.  The plaintiff explains that the defendant had no duty to provide prospective employers with statements regarding 
former
 employees.  Thus, the defendant's act was not unique to the defendant's position as a police chief.  The plaintiff also claims that the defendant's decision to provide the statement was not a policy decision.  The defendant argues the decision to make the statements was a discretionary act and that it is not necessary to establish that the defendant made a policy decision.  We agree with the plaintiff.

The standards guiding our review of the trial court's decision to grant the defendant's section 2--619(a)(9) motion are clear.  
Section 2--619(a)(9) of the Code of Civil Procedure provides for dismissal if "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect or defeating the claim."  735 ILCS 5/2--619(a)(9) (West 1994).  Thus, the moving party admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter which avoids or defeats the claim.  
T&S Signs, Inc. v. Village of Wadsworth
, 261 Ill. App. 3d 1080, 1083 (1994). 
 For purposes of a section 2--619 motion, all well-pleaded facts in the complaint are deemed admitted and only the legal sufficiency of the complaint is at issue.  
Sisk v. Williamson County
, 167 Ill. 2d 343, 346 (1995); 
Kubian v. Alexian Brothers Medical Center
, 272 Ill. App. 3d 246, 250 (1995). However, exhibits attached to the complaint become part of the complaint and will also be considered.  
Abbott v. Amoco Oil Co.
, 249 Ill. App. 3d 774, 778-79 (1993).
  Thus, "the trial court may consider pleadings, depositions, and affidavits."  
Zedella v. Gibson
, 165 Ill. 2d 181, 185 (1995).  "We review an order granting a section 2--619(a)(9) motion 
de novo
, considering whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law."  
Bainter v. Village of Algonquin
, 285 Ill. App. 3d 745, 750 (1996), citing 
Kedzie & 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 116-17 (1993).

Section 2--201 of the Tort Immunity Act provides:

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."  Ill. Rev. Stat. 1987, ch. 85, par. 2--201.

Section 2--201 codifies the common-law distinction between discretionary acts and ministerial duties.  
Snyder v. Curran Township
, 167 Ill. 2d 466, 473 (1995); 
Corning v. East Oakland Township
, 283 Ill. App. 3d 765, 768 (1996).  Thus, a public official is immune from liability for injuries caused by discretionary acts, but not from those caused by ministerial acts.  
Snyder
, 167 Ill. 2d at 473.  While the distinction between discretionary and ministerial acts has evaded precise formulation, it is well settled that an act will not be held to be discretionary unless it is "unique to a particular public office."  
Snyder
, 167 Ill. 2d at 474.  Further, a public official's discretionary act will not be shielded by section 2--201 immunity unless the discretionary act is made in furtherance of a governmental policy.  
Harinek v. City of Chicago
, 283 Ill. App. 3d 491, 496 (1996).

For example, in 
Lenz v. Julian
, 276 Ill. App. 3d 66 (1995), this court held that a state trooper was not immune from liability for injuries caused by a car accident, because the decisions that caused the accident were not unique to his position as a state trooper.   
Lenz
, 276 Ill. App. 3d at 73.  While on duty, the defendant, a state trooper, began pursuit of a motorcyclist.  After the pursuit was called off, the defendant sped through an intersection and struck the plaintiff's vehicle.  The defendant heard that the motorcyclist had crossed into Wisconsin, and the defendant intended to travel to Wisconsin to assist his fellow officer.  The defendant's flashing lights were not visible to most motorists, and he activated his siren only shortly before entering the intersection.  A jury found in favor of the plaintiff.  
Lenz
, 276 Ill. App. 3d at 67-68.  On appeal, the defendant argued that he was immune from suit under the common-law doctrine of public officials' immunity because his conduct involved the performance of a discretionary duty.  
Lenz
, 276 Ill. App. 3d at 72.  This court held that the defendant was not immune because the act that caused the accident was not unique to his particular office.  
Lenz
, 276 Ill. App. 3d at 73.  This court reasoned that the decision to respond to a call for assistance was not the cause of the accident.  
Lenz
, 276 Ill. App. 3d at 73.  Rather, the accident was caused by the defendant's decision to speed as he travelled through the intersection, even though he was not in hot pursuit and the chase had been abandoned.  
Lenz
, 276 Ill. App. 3d at 73.

Similarly, in 
Currie v. Lao
, 148 Ill. 2d 151 (1992), our supreme court held that a state trooper was not entitled to common-law public officials' immunity because the choices he made which caused the plaintiff's injuries were not "an exercise of 
his
 official
 discretion."  (Emphasis in original.)  
Currie
, 148 Ill. 2d at 167.  While responding to a nonemergency call, the defendant drove the wrong way down a one-way street and struck the plaintiff's vehicle.  It was not clear whether the defendant activated his siren and flashing lights.  A jury found in favor of the plaintiff.  
Currie
, 148 Ill. 2d at 154.  On appeal, the defendant argued that he was immune from the plaintiff's suit under the doctrine of public officials' immunity.  
Currie
, 148 Ill. 2d at 166.  Our supreme court held that the defendant was not protected by public officials' immunity because, although his decisions regarding what route to follow were discretionary, they were not "uniquely related to [his] official duties as a State trooper."  
Currie
, 148 Ill. 2d at 167.  The court reasoned that "[t]hese same choices are made by all drivers of motor vehicles."  
Currie
, 148 Ill. 2d at 167.

The case at bar is similar to both 
Currie
 and 
Lenz
.  The defendant in the instant case was asked to provide information contained in the files regarding the plaintiff's job performance.  Although not required by any official mandate to provide employment information, the defendant decided to provide the plaintiff's prospective employers with statements.  However, the defendant did 
not
 report information that was contained in the plaintiff's record.  Rather, the defendant told the plaintiff's prospective employers that the plaintiff was called "Code Red," was unstable, and that he would not hire him back.  Thus, the decision that caused the plaintiff's injury in the present case was not the decision to provide information, but, rather the statements he chose to provide.  The defendant's decisions were not unique to his position as police chief.  To the contrary, decisions regarding what to tell prospective employers are made by all past employers.  
Currie
, 148 Ill. 2d at 167.  Accordingly, we determine that the defendant was not exercising his 
official
 discretion while making the alleged defamatory statements because his act was not unique to the office of police chief.

The case at bar is also similar to 
Harinek
 (283 Ill. App. 3d 491), wherein the Appellate Court, First District, held that a fire marshall's order to a tenant to stand behind a door during a fire drill was not covered by section 2--201 because his order was not  made in furtherance of a governmental policy.  
Harinek
, 283 Ill. App. 3d at 496.  The court stated that "[t]he operative language in section 2--201 is 'not liable for an injury resulting from his act or omission 
in determining policy
.' "  
(Emphasis in original.)
 Harinek
, 283 Ill. App. 3d at 496, quoting 745 ILCS 10/2--201 (West 1992).  The court reasoned that, although the City of Chicago had a policy of fire safety and the fire marshall's act was discretionary, it was not a policy determination within the meaning of the Tort Immunity Act.  
Harinek
, 283 Ill. App. 3d at 496.  In the case at bar, the defendant has failed to allege that his action was, in fact, a policy determination.

Therefore, because the defendant's statements were not discretionary and were not policy determinations, the defendant is not entitled to immunity from suit under section 2--201 of the Tort Immunity Act.  Thus, the trial court improperly dismissed the plaintiff's third amended complaint based on the defendant's motion on the pleadings and on his section 2--619(a)(9) motion.

The defendant's citation to 
Johnson v. Mers
, 279 Ill. App. 3d 372 (1996), is misplaced.  
Johnson
 is factually distinguishable from the case at bar.  In 
Johnson
, the plaintiff was injured by an off-duty police officer hired by the defendant, a police chief.  The plaintiff alleged that the defendant was liable for wilful and wanton and reckless misconduct, negligent hiring, negligent retention, and negligent entrustment.  
Johnson
, 279 Ill. App. 3d at 375.  The trial court granted the defendant's motion for summary judgment based on the lack of proximate cause.  This court affirmed on this ground and then noted that the defendant was entitled to summary judgment on another basis of governmental immunity under section 2--201 of the Tort Immunity Act.  
Johnson
, 279 Ill. App. 3d at 380.   This court reasoned that the act of hiring a police officer is discretionary because, although there was a hiring plan in place, the ultimate decision whether to hire an officer is discretionary.  
Johnson
, 279 Ill. App. 3d at 380.

The case at bar is factually distinguishable from 
Johnson
 in two important respects.  First, the defendant in 
Johnson
 had a duty, pursuant to a municipal hiring plan, to make hiring decisions.  The defendant in the case at bar had no duty to provide information to former employees' prospective employers.  Second, in 
Johnson
, the decision which allegedly caused the injury, that is, the decision to hire the police officer, was unique to the police chief's office.  The decision in the case at bar, that is, the decision to relate information not contained in the plaintiff's file, was not unique to the defendant's office.  Thus, 
Johnson
 is not dispositive of the case at bar.  

The defendant's argument that he has a duty to the general public to reasonably insure that only qualified applicants become law enforcement officers is also not persuasive.  The defendant cites no authority for this proposition.  Further, we have found nothing to support the proposition that a police chief owes a duty to the public regarding the hiring decisions of federal law enforcement agencies.  

Next, the defendant urges this court to affirm the trial court's dismissal based on the affirmative defense of absolute common-law privilege.  The defendant asserts that the defendant is immune from liability for slander because he was a public official at the time the alleged statements were made.  The plaintiff argues that the defendant waived this argument, because he raised it for the first time on appeal.  Further, the plaintiff asserts that the privilege does not apply in this case because the defendant was  not acting within the scope of his official duties when he made the alleged statements.  We agree with the plaintiff that absolute common-law privilege does not apply in this case.

It is well settled that, although an appellant may not raise an issue for the first time on appeal, an appellee may raise a defense for the first time on appeal as long as the factual basis for such defense was before the trial court.  
Mortell v. Insurance Co.
, 165 Ill. App. 3d 915, 921 (1988), citing 
Shaw v. Lorenz
, 42 Ill. 2d 246 (1969).  Because the factual basis for the defense of common-law absolute privilege was contained in the plaintiff's third amended complaint and the defendant's motions to dismiss, we will address the merits of this argument.

We recognize that, in certain circumstances, communications made by public officials are absolutely privileged in that no remedy can be had in a civil action.  
Geick v. Kay
, 236 Ill. App. 3d 868, 875 (1992).  However, it is well settled that the privilege does not apply unless the public official made the communication while acting within the scope of his or her official duties.  
Geick
, 236 Ill. 2d at 876-77.  Because nothing in the record indicates that the defendant had a duty as police chief to provide prospective employers with statements regarding former employees, common-law absolute privilege is inapplicable.

The defendant also argues that the trial court's dismissal should be affirmed because the defendant's statements could be innocently construed. The plaintiff argues that the defendant waived this argument because the trial court denied the defendant's motion to dismiss on this ground and the defendant failed to file a cross-appeal on this issue.  An appellee need not cross appeal to preserve an argument ruled on adversely to the appellee in the trial court if the judgment of the trial court was not, at least in part, against him.  
Landmarks Preservation Council v. City of Chicago
, 125 Ill. 2d 164, 174 (1988); 
Fillpot v. Midway Airlines, Inc.
, 261 Ill. App. 3d 237, 240 (1994).  Because no part of the judgment of the trial court was against the defendant in this case, we will address the merits of this argument.

The trial court denied the defendant's section 2--615 motion to dismiss the plaintiff's third amended complaint based on the innocent construction rule.  "When the legal sufficiency of a complaint is challenged by a section 2--615 motion to dismiss, all well-pleaded facts in the complaint are taken as true and a reviewing court must determine whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted."  
Connick v. Suzuki Motor Co.
, 174 Ill. 2d 482, 490 (1996). 
 We review the denial of a section 2--615 motion to dismiss 
de novo
.  
Kedzie & 103rd Currency Exchange
, 156 Ill. 2d at 116.

There are two types of defamation actions, defamation 
per se
 and defamation 
per quod
.  To prove defamation 
per se
, the plaintiff must establish that the challenged statement is so obviously and naturally harmful to the person to whom it refers that a showing of special damages is not necessary.  Four categories of statements constitute defamation 
per se
: (1) language that imputes the commission of a criminal offense; (2) language that imputes infection with a loathsome communicable disease;
 (3) language that imputes an inability to perform or want of integrity in the discharge of duties or office or employment; and (4) language that prejudices a party, or imputes a lack of ability, in his or her trade, profession, or business.  
Bryson v. News America Publications
, Inc.
, 174 Ill. 2d 77, 88 (1996).

However, even if statements fit into a recognized defamation 
per se
 category, the plaintiff will not recover if the statements can reasonably be given an innocent construction.  
Bryson
, 174 Ill. 2d at 90.  As our supreme court recently explained:

"The innocent construction rule requires courts to consider a written or oral statement in context, giving the words, and their implications, their natural and obvious meaning.  If, so construed, a statement 'may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff, it cannot be actionable 
per se
.' "  
Bryson
, 174 Ill. 2d at 90, quoting 
Chapski v. Copley Press
, 92 Ill. 2d 344, 352 (1982). 

Further, the fact that an allegedly defamatory statement is capable of an innocent construction is insufficient to bar recovery for defamation 
per se
.  
Bryson
, 174 Ill. 2d at 93.  Rather, the allegedly defamatory statement must be given its natural and obvious meaning and must be interpreted as it was used, according to the ideas it was intended to convey to the listener.  
Bryson
, 174 Ill. 2d at 93. 

When the defendant's allegedly defamatory statements are taken in context and given their natural and obvious meaning, it is clear that the defendant intended to describe the plaintiff as someone who was and would be unable to perform as a law enforcement officer.  Count I of the plaintiff's third amended complaint alleged that the defendant told the DT that after a shooting incident "the plaintiff was given the nickname [']Code Red['] " which designates a person who is "mentally disturbed," "the plaintiff became incapable of handling stress," "became unpredictable," and "displayed an increasingly [and pervasive] negative attitude."  Count I also alleged that the defendant told the DT that the defendant monitored the plaintiff "with the idea of finding just cause to fire him," was "glad to see the plaintiff leave," "would not rehire the plaintiff," "would go to any length to prevent [the plaintiff's] return," and "would subject the plaintiff to every psychological screening available."  Further, the defendant allegedly stated that if the plaintiff returned "the defendant could have department wide mutiny," that "other officers would not work with the plaintiff," and the "defendant would not recommend the plaintiff for employment with the United States Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms."  Count II of the plaintiff's third amended complaint alleged that the defendant told the FBI that after a shooting incident the plaintiff "began to act strangely," "was nicknamed [']Code Red['] by his fellow officers *** a code word for a person acting crazy," and "[t]hat the plaintiff should be given psychological testing before the final consideration for hiring." 

After considering all of these statements taken together in context, it is clear that, in making the alleged statements, the defendant intended to convey that the plaintiff was, and is currently, unable to perform his duties as a law enforcement officer.  
See 
Bryson
, 174 Ill. 2d at 88.  The defendant made the alleged statements in the context of a professional recommendation.  Therefore, he knew his words would have great impact on whether the plaintiff received a job offer from the DEA or the BATF.  He further knew that the plaintiff applied for law enforcement positions.  Telling such a prospective employer that an applicant is "mentally ill" or "crazy," taken in context with the other alleged statements, constitutes defamation 
per se
, incapable of an innocent construction.  Thus, the trial court properly denied the defendant's motion to dismiss the plaintiff's third amended complaint based on the innocent construction rule.

The defendant cites to 
Anderson v. Vanden Dorpel
, 172 Ill. 2d 399 (1996), to support his argument.  However, 
Anderson
 is factually distinguishable.  In 
Anderson
, the plaintiff worked under the defendant as a fund raiser for Northwestern University.  
Anderson
, 172 Ill. 2d at 403.  The plaintiff applied for another job as a fund raiser for the Young Men's Christian Association of Metropolitan Chicago (YMCA).  
Anderson
, 172 Ill. 2d at 403.  The plaintiff alleged that the defendant told a representative of the YMCA that the plaintiff failed to follow up on assignments.  
Anderson
, 172 Ill. 2d at 404.  Our supreme court held that this statement was not defamatory 
per se
 because it was capable of an innocent construction.  
Anderson
, 172 Ill. 2d at 413.  The court reasoned that "the remark, construed in context, may be understood to mean simply that the plaintiff did not fit in with [the defendant's organization] *** and failed to perform well in that particular job setting, and not as a comment on her ability to perform in other, future positions."  
Anderson
, 172 Ill. 2d at 413.

In the case at bar, the defendant's statements were clearly meant to be a comment on the plaintiff's ability to perform in future positions.  The defendant allegedly stated that the plaintiff was mentally ill and crazy and that the defendant would not rehire him and would not recommend him for a position with the BATF.  The defendant also allegedly stated that, before considering the plaintiff for a position, the plaintiff should undergo psychological testing.  These statements cannot be reasonably construed as applying only to the plaintiff's ability to perform as a police officer for the City of Aurora.  
Bryson
, 174 Ill. 2d at 90.  Rather, the statements impute the plaintiff's inability to perform as a law enforcement officer in general.  Thus, 
Anderson
 is not dispositive of the case at bar. 

Further, the defendant's citation to 
Pease v. International Union of Operating Engineers
, Local 150
, 208 Ill. App. 3d 863 (1991), is not persuasive.  In 
Pease
, the defendant and the plaintiff were embroiled in a collective bargaining agreement dispute.  
Pease
, 208 Ill. App. 3d at 866.  The defendant's union picketed the plaintiff's business.  
Pease
, 208 Ill. App. 3d at 866.  The defendant alleged that the plaintiff threatened two union members with a revolver.  
Pease
, 208 Ill. App. 3d at 866.  Subsequently, the defendant was quoted in a newspaper as making the following statements about the plaintiff: "He's dealing with half a deck, did you know that?  I think he's crazy."  
Pease
, 208 Ill. App. 3d at 867.  This court held that the defendant's statements were not actionable 
per se
 because they were "mere name calling or *** rhetorical hyperbole *** employed only in a loose, figurative sense."  
Pease
, 208 Ill. App. 3d at 870.  The case at bar is factually distinguishable from 
Pease
 because the parties in the instant case were not involved in a public dispute.  Further, when taken in context, it is clear that the defendant intended that the DEA and BATF take his statements as more than mere name calling or hyperbole. 

 The plaintiff also argues that the trial court erroneously granted the defendant's motion to dismiss count II of the plaintiff's third amended complaint based on an exculpatory/release authorization the plaintiff issued to the DEA.  The plaintiff claims that the defendant's statements exceeded the scope of the exculpatory/release authorization.  The defendant argues that the plaintiff waived this issue by failing to raise it in the trial court.  The defendant also asserts that his statements were covered by the exculpatory/release authorization because he was attempting to comply with the release.  We agree with the plaintiff.

Initially, we note that the plaintiff did not waive this argument.  The trial court granted the defendant's motion for summary judgment based on its interpretation of the exculpatory/release authorization.  Because we must review this decision 
de novo
 (
McNamee v. State of Illinois
, 173 Ill. 2d 433, 438 (1996)), we must decide, as a matter of law, whether the authorization applies to the facts alleged in the plaintiff's complaint.  Thus, our analysis must contain the meaning and scope of the exculpatory/release authorization.

Summary judgment is proper where the pleadings, admissions, and depositions on file, together with the affidavits, demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2--1005 (West 1994); 
McNamee
, 173 Ill. 2d at 438.  A motion for summary judgment and its supporting documents must be construed "strictly against the movant and liberally in favor of the opponent."  
Barnett v. Zion Park District
, 171 Ill. 2d 378, 385 (1996).  However, a trial court must grant a defendant's motion for summary judgment where a plaintiff fails to factually support an element of her claim.  
Madeo v. Tri-Land Properties, Inc.
, 239 Ill. App. 3d 288, 294 (1992).  The review of a trial court's decision to grant a summary judgment motion is 
de novo
.  
McNamee
, 173 Ill. 2d at 438. 

Although exculpatory/release agreements releasing parties from future liability are not favored, a court will enforce an exculpatory clause unless it is against public policy or there is something in the social relationship between the parties militating against enforcement.  
Tyler Enterprises of Elwood, Inc. v. Skiver
, 260 Ill. App. 3d 742, 750 (1994).  However, such agreements are strictly construed against the benefiting party and "must spell out the intention of the parties with great particularity."  
Scott & Fetzer Co. v. Montgomery Ward & Co.
, 112 Ill. 2d 378, 395 (1986).  Further, an exculpatory agreement "will not be construed to defeat a claim which is not explicitly covered by [its] terms."  
Scott & Fetzer Co.
, 112 Ill. 2d at 395.

              "AUTHORITY TO RELEASE INFORMATION

TO WHOM IT MAY CONCERN:

I hereby authorize any Special Agent or other authorized representative of the Drug Enforcement Administration bearing this release, or copy thereof, within one year of this date, 
to obtain any information in your files
 pertaining to my employment, military, credit, residential, criminal, or education records including, but not limited to, academic, achievement, attendance, athletic, personal history, disciplinary, arrest, and conviction records.  I hereby direct you to release such information upon request of the bearer.  This release is executed with full knowledge and understanding that the information released is for official use by the Drug Enforcement Administration and may be disclosed to such third parties as necessary in the fulfillment of official responsibilities.

I hereby release you, 
as custodian of such records
, and any school, college, university, or other educational institution, or business establishment, including its officers, employees, or related personnel, both individually and collectively, from any and all liability for damages of whatever kind, which may at any time result to me because of compliance with this authorization and request to release information, 
or any attempt to comply with it
.  Should there be any question as to the validity of this release, you may contact me at the address or telephone number below."  (Emphasis added.)

After strictly construing the language of the exculpatory/release authorization, it is clear that the plaintiff only intended to authorize the release of information contained in his personnel file.  The authorization states that the DEA is authorized "to obtain any information in [the Aurora Police Department's] files pertaining to [the plaintiff's] employment."  Nothing in the authorization permitted the defendant to make statements regarding the plaintiff's employment.  Because the plaintiff's third amended complaint alleges that the defendant provided statements to the DEA, the plaintiff sufficiently alleged that the defendant exceeded the exculpatory/release authorization.  Accordingly, the trial court erroneously granted the defendant's motion for summary judgment on count II of the plaintiff's third amended complaint.

The defendant asserts that, even if he exceeded the scope of the exculpatory/release authorization, summary judgment was proper because the defendant was attempting to comply with the exculpatory/release authorization. We fail to see how the defendant's "attempt to comply" could be construed to be covered by the terms of the authorization.  
Scott
, 112 Ill. 2d at 395. Furthermore, the defendant does not allege that he based his statements on information contained in the plaintiff's employment file.  In fact, the defendant does not explain why he did not tell the DEA about the favorable letters the plaintiff allegedly received from the defendant regarding the plaintiff's involvement in a burglary incident and the plaintiff's resignation.  The defendant has not established that, in making the statements, he was attempting to comply with the exculpatory/release authorization.  

The defendant also cites numerous cases from foreign jurisdictions for the proposition that employment information releases are a complete bar to defamation suits.  However, these cases are not binding on this court.  
Skipper Marine Electronics, Inc. v. United Parcel Service
, Inc.
, 210 Ill. App. 3d 231, 239 (1991).

Finally, we deny the plaintiff's motion to strike portions of the defendant's brief as moot.

For the above reasons, the judgment of the circuit court of Kane County is reversed.

Reversed.

INGLIS and HUTCHINSON, JJ., concur.