MABEL MAKELA *et al.*, Plaintiffs-Appellants, v. MICHAEL L. ROACH, Defendant-Appellee.

Second District   No. 84—1065

Opinion filed February 21, 1986.—Rehearing denied May 21, 1986.

G. Douglas Grimes, of Waukegan, for appellants.

George W. Spellmire, Gary A. Grasso, and Joshua G. Vincent, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee.

JUSTICE SCHNAKE delivered the opinion of the court:

Plaintiffs, Mabel Makela (wife), Emil Makela (husband), and Courtney Makela (son) initiated this action for legal malpractice and wilful and wanton conduct in the circuit court of Lake County against the defendant, attorney Michael L. Roach. On October 10, 1984, the trial court dismissed plaintiffs' amended complaint with prejudice and plaintiffs brought this appeal.

Plaintiffs filed their original complaint on February 8, 1984, naming attorney Roach and notary public Edward S. Blachaniec as defendants. The trial court dismissed count I against defendant Roach on May 24, 1984, and later dismissed the remaining four counts against defendant Roach on June 4, 1984. Defendant Blachaniec filed an answer to the two counts against him. Plaintiffs filed an amended complaint on June 25, 1984, and defendant Roach again filed a motion to dismiss the counts against him (now numbered counts I through VI). On October 10, 1984, the trial court granted defendant Roach's motion to dismiss. On November 1, 1984, the court entered a *nunc pro tunc* order specifically finding that there was no just reason to delay enforcement or appeal of its dismissal of counts I through VI. Counts VII and VIII of plaintiffs' amended

complaint against defendant Blachaniec are not before this court.

Count I of plaintiffs' amended complaint alleged that Mabel Makela retained defendant to counsel and advise her on a plan to transfer various jointly held marital assets out of her husband's name and into her name alone or her daughter's name, Suzanne Rayunas. Emil's physical and mental condition had recently deteriorated and his future medical and nursing home expenses were expected to exceed his income. The purpose of the plan was to protect the property from "diminution by their potential future medical creditors and by estate taxes." Under the plan, Suzanne Rayunas and her husband, Roger Rayunas, would support Mabel and Emil Makela.

After Mabel consulted with defendant, Emil voluntarily transferred his one-half interest in the marital home to Suzanne Rayunas and Mabel transferred $74,019.88 in cash from their joint account to Suzanne Rayunas and/or Roger Rayunas. Mabel also obtained a judgment of dissolution of marriage from Emil which awarded her all of the real and personal property acquired by the parties during the course of the marriage. As a result of these actions, Mabel alleged the transferred property was encumbered and diminished by several creditors of Suzanne and Roger Rayunas, including defendant, who had failed to disclose that he held an unsatisfied $3,400 judgment against Roger Rayunas. Mabel further alleged that Suzanne and Roger Rayunas spent the remaining cash funds for their own purposes and not for the support of Emil or herself.

Simply stated, Mabel alleged in her amended complaint that defendant breached one or more of the duties owed to her in that: (1) defendant undertook to represent her without disclosing his conflicting personal interest in the financial affairs of Roger and Suzanne Rayunas; (2) defendant was negligent in failing to counsel and advise Mabel as to the potential consequences of the plan and in allowing her to transfer property to her daughter and son-in-law, without restrictions, thus exposing said property to attachment, lien or other encumbrance by their creditors; and (3) defendant was negligent in failing to counsel and advise Mabel as to the potential consequences of the plan and in allowing her to transfer property to her daughter and son-in-law, without restrictions, thus allowing them to spend the money as they pleased and not for the support of Emil and herself as they had agreed.

In count II, Mabel alleged that the acts and omissions of defendant were committed with intentional or reckless disregard of her rights and prayed for punitive damages. In counts III and IV, Emil Makela made similar allegations and requested similar damages, al-

leging that he was also defendant's client or, in the alternative, that he was a third-party beneficiary of defendant's representation of Mabel. In counts V and VI Courtney Makela made similar allegations and requested similar damages alleging that he also was a third-party beneficiary of defendant's representation of Mabel.

The first issue we address is whether defendant owed any duty of reasonable skill and care to Emil or Courtney Makela. Initially, Emil argues that he was an actual client of defendant's based on the fact that defendant prepared joint wills for himself and Mabel in August of 1978. It is clear, however, that Emil Makela did not request or receive legal advice from defendant as to the matters involved herein and, therefore, was not defendant's client. *York v. Stiefel* (1983), 99 Ill. 2d 312, 320.

Emil also argues that he was a direct third-party beneficiary of defendant's representation of Mabel because she intended him to benefit from the plan. In *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, our supreme court stated the test for determining if there was a duty between an attorney and a nonclient:

"In the area of legal malpractice the attorney's obligations to his client must remain paramount. In such cases the best approach is that the plaintiffs must allege and prove facts demonstrating that they are in the nature of third-party intended beneficiaries of the relationship between the client and the attorney in order to recover in tort. [Citations.] By this we mean that to establish a duty owed by the defendant attorney to the nonclient the nonclient must allege and prove that the intent of the client to benefit the nonclient third party was the *primary or direct purpose* of the transaction or relationship. [Citation.]" (Emphasis added.) 92 Ill. 2d 13, 20-21.

Applying the intent-to-directly-benefit test to the facts alleged in the amended complaint, it is clear that Emil was not a direct third-party beneficiary. Defendant was hired to advise Mabel on a plan to transfer the marital assets out of Emil's name. The primary purpose of the plan was to protect Mabel's interest in the property. As plaintiffs' counsel admitted at oral argument, Emil was not benefited by the plan which stripped him of his assets and divorced him from his wife. Further, defendant could not have owed Emil a duty of due care when part of the plan was for defendant to represent Mabel in a dissolution of marriage action against Emil, thus making Emil the opposing party in an adversarial process. See *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 22-23.

Lastly, Courtney argues that he was a direct third-party ben-

eficiary of Mabel's plan because he was a beneficiary under her will which defendant drafted in February of 1979. Under paragraph 7(m) of the amended complaint, part of the plan was the redrafting of Mabel's will. Courtney is correct that under *Ogle v. Fuiten* (1984), 102 Ill. 2d 356, an attorney may owe a duty of due care to the intended beneficiaries under a will drawn by him. However, in the present case, none of Courtney's allegations of negligence relate in any way to defendant's drafting of the will. By reason of his status as a beneficiary under Mabel's will, Courtney does not achieve standing to sue defendant as to matters beyond the scope of the will simply because they might affect Mabel's property.

We next address the question of whether the amended complaint stated a cause of action by Mabel Makela. The trial court dismissed counts I and II on the basis that defendant did not have a legal duty to protect Mabel from the fraudulent and unforeseeable acts of her daughter and son-in-law. The trial court's reasoning, however, did not justify dismissing Mabel's entire cause of action, because Mabel also alleged she was damaged by the acts of the Rayunases' creditors. The lawful actions of these creditors, other than defendant, cannot be said to be fraudulent or unforeseeable in light of the fact that defendant held an unsatisfied $3,400 judgment against Suzanne and Roger Rayunas. Since this rationale does not dispose of the remaining issues, we decline to review it and choose, instead, to decide this appeal on an alternate basis.

Defendant argues that Mabel cannot sue him because her plan to transfer marital assets from her husband was intended to defraud his legitimate medical debtors. Mabel argues that the pleadings do not disclose an intent to defraud his medical creditors because the plan called for Suzanne, Roger and herself to support Emil while he was in the nursing home.

According to the amended complaint, Mabel consulted defendant on a "plan to get as much of the joint assets of Emil and Mabel Makela as possible into the name of Mabel Makela, or out of the name of Emil Makela." The purpose of this plan was the "protection of the estate of Emil Makela and Mabel Makela from diminution by their potential future medical creditors and by estate taxes" because Emil's future medical and nursing expenses were expected to exceed his income. The plan was then "to have Suzanne and Roger Rayunas, and to some extent Mabel Makela, support Emil Makela while he was in the nursing home." In paragraph 14(g)(xiii), however, Mabel alleged that defendant failed to represent her competently in that he:

832

"Failed to advise as to possible gift tax consequences of the transfer, or of probable disqualification for public aid or medicare medical services, since such transfers are presumed to be fraudulent for such purposes."

We find that the only reasonable interpretation of these allegations is that the plan was to preserve the marital assets by stripping Emil of his assets, dissolving his marriage to Mabel, and attempting to obtain partial or full payment of his expenses through public aid or medicare with further support coming from Emil's family. This transfer of marital assets would be presumed fraudulent for purposes of obtaining public aid or medicare because the property was transferred without legal consideration at a time when the parties contemplated the probability of medical claims against Emil, and leaving Emil without sufficient property to pay his medical expenses. See *First Security Bank v. Bawoll* (1983), 120 Ill. App. 3d 787, 791.

■■ Where a party voluntarily elects to follow advice intended to extricate herself from a questionable situation, she comes to this court with unclean hands and may not seek relief from her wrongful conduct through a legal malpractice action. (*Robins v. Lasky* (1984), 123 Ill. App. 3d 194; *Mettes v. Quinn* (1980), 89 Ill. App. 3d 77.) We pass no judgment on the advice given by defendant, as our refusal to aid Mabel is a decision based upon her attempt to evade the law. A long and unbroken series of precedents establishes the rule that courts will not aid a fraudfeasor who invokes the court's jurisdiction to profit from his own fraud by recovering damages. (89 Ill. App. 3d 77, 80.) The trial court, therefore, did not err in dismissing counts I and II of the amended complaint.

For the reasons stated herein, the judgment of the circuit court of Lake County dismissing plaintiffs' amended complaint is affirmed.

Affirmed.

NASH, P.J., and UNVERZAGT, J., concur.