ANGELA SARNO *et al.*, Plaintiffs, v. ALFRED A. AKKERON *et al.*, Defendants (Evans, Marshall, and Pease, P.C., Counterplaintiff-Appellant; Albert L. Grasso, Counterdefendant-Appellee).

First District (5th Division)   No. 1—96—2410

Opinion filed August 29, 1997.

Rudnick & Wolf, of Chicago (Fredric A. Cohen and Heather L. Smedstad, of counsel), for appellant.

Hinshaw & Culbertson, of Chicago (George Spellmire, Stephen Swofford, and Christine Olson, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiffs, Angela Sarno and Better Care, Ltd., filed suit against Dr. Alfred A. Akkeron and Evans, Marshall & Pease (EMP), among others, alleging they conspired in the bad-faith filing of an involuntary bankruptcy petition against Better Care. EMP counterclaimed against its attorney, Albert Grasso, alleging that Grasso engaged in legal malpractice by advising EMP to participate in the involuntary bankruptcy petition. On motion by Grasso, the trial court dismissed EMP's counterclaim under section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615(a)(4) (West 1994)), finding it barred by the bankruptcy court's decision. In this appeal, EMP contends that (1) it was prejudiced by the improper designation of Grasso's motion to dismiss as originating under Code section 2—615, rather than section 2—619 (735 ILCS 5/2—619 (West 1994)); (2) its counterclaim stated a cause of action for legal malpractice; and (3) the court erred in finding that it was precluded from asserting its legal malpractice claim under the doctrines of collateral estoppel and unclean hands.

In March 1986, Sarno, an occupational therapist, and Akkeron, an orthopedic specialist, formed a medical corporation known as Better Care, Ltd., to provide physical and occupational therapy services. Under their agreement, Akkeron was to refer patients to the practice

while Sarno provided the physical therapy services. Akkeron also agreed to furnish the funds necessary to establish the business. Better Care retained EMP, Akkeron's personal and professional accounting firm, as the corporation's accountants, and also engaged Grasso, Akkeron's personal attorney, to assist in the process of incorporating Better Care and to serve as its counsel.

Late in 1986, it became necessary to restructure the business relationship between Sarno and Akkeron, and in the ensuing months, the two became embroiled in a bitter dispute over the control of Better Care. The dispute was still unresolved in early 1988, when EMP unexpectedly learned from Better Care's receptionist that it had been terminated as Better Care's accountant. As of that time, Better Care owed EMP $300 for its services for the most recent quarter-year. Better Care also had accumulated some outstanding debts to other creditors, including Akkeron and Broadway Land Development Company (Broadway), a corporation solely owned by Akkeron which rented space to Better Care.

On February 22, 1988, Grasso filed a petition in bankruptcy court on behalf of EMP, Akkeron, and Broadway, which sought to impose involuntary bankruptcy upon Better Care. In a published order dated March 1, 1989, the court dismissed the petition, concluding that the petitioners had fallen short of satisfying the requirements of the Bankruptcy Code for a declaration of bankruptcy status. See 11 U.S.C. §§ 303(b), (h)(1) (1988). The court found, in relevant part, a complete lack of evidence that Better Care was not paying debts as they became due within the meaning of section 303(h)(1). *In re Better Care, Ltd.*, 97 B.R. 405, 407 (Bankr. N.D. Ill. 1989); 11 U.S.C. § 303(h)(1) (1988).

The court reserved jurisdiction to consider a petition filed by Better Care and Sarno alleging that the petitioners had initiated the bankruptcy proceedings in bad faith under section 303(i)(2) of the Bankruptcy Code (11 U.S.C. § 303(i)(2) (1988)). Following a hearing on July 14, 1988, the court determined that each of the creditors had filed the petition for the sole purpose of harassing Sarno and driving her and Better Care out of business. The court also found that Grasso had provided the creditors with incompetent representation regarding the petition. However, regardless of this fact, the court ruled that each creditor had formed its own antipathy towards Sarno and had decided to act upon it "wholly independently from Grasso's advice." Accordingly, after a third hearing in November of 1988, the court awarded Better Care, *inter alia*, compensatory damages of $3,496.19, attorney fees of $50,785.24, and punitive damages of $2,000 against EMP. In addition, the court sanctioned Grasso and his law firm *sua*

*sponte* under Bankruptcy Rule 9011, for filing and pursuing the petition. The court "strongly urge[d] the Grasso firm to invest in bankruptcy education prior to embarking into bankruptcy matters in the future."

On July 26, 1993, Sarno and Better Care filed their first amended complaint for imposition of a constructive trust and other relief, which gave rise to the counterclaim at issue. The complaint alleged various acts undertaken, particularly by Akkeron, which were part of a scheme designed to destroy Better Care and to terminate Sarno's interest in the corporation. The complaint further charged that EMP knowingly took part in this scheme by joining in the filing of the bankruptcy petition.

EMP brought a two-count counterclaim charging Grasso with legal malpractice, based both upon negligence and breach of contract. According to the counterclaim, Grasso solicited EMP to participate in the filing of the bankruptcy action, representing that it was an appropriate means to collect the outstanding debt that Better Care owed EMP. EMP alleged that Grasso failed to indicate that the petition was without legal or factual basis and neglected to advise EMP regarding the risks associated with the filing. EMP sought recovery of the actual and punitive damages it was ordered to pay by the bankruptcy court, plus any damages and attorney fees incurred as a result of Sarno and Better Care's pending claim.

Grasso moved to dismiss the counterclaim under Code section 2—615, advancing several arguments as to its legal insufficiency. In his reply brief, Grasso raised an additional argument sounding in collateral estoppel: that the bankruptcy court's determination of bad faith precluded EMP from recovering any damages against Grasso for legal malpractice.

Following a hearing, the transcript of which was omitted from the record, the trial court dismissed EMP's counterclaim under section 2—615. In written findings, the court concluded that EMP was collaterally estopped from suing Grasso for malpractice by the bankruptcy court's finding that it had filed the underlying action in bad faith. As an alternative basis for dismissal, the court found EMP's suit barred under the equitable doctrine of unclean hands. The instant appeal followed.

On appeal, EMP contends that the court erred in finding that the malpractice claim was barred by the bankruptcy court's decision that the creditors had filed the bankruptcy case in bad faith. Initially, however, EMP argues that Grasso engaged in improper motion practice by asserting his collateral estoppel argument in the context of a motion for judgment on the pleadings, rather than in a motion

to dismiss under Code section 2—619(a)(4). 735 ILCS 5/2—619(a)(4) (West 1994). EMP alleges that it was prejudiced by the misdesignation and that the trial court should not have acquiesced in the practice.

■ Meticulous practice requires an attorney to specify whether his motion to dismiss is brought under Code section 2—615 or 2—619. *Premier Electrical Construction Co. v. La Salle National Bank*, 115 Ill. App. 3d 638, 642, 450 N.E.2d 1360 (1983). A section 2—615 motion attacks only a complaint's legal sufficiency; its purpose is not to raise affirmative factual defenses, but to allege defects apparent on the face of the pleadings. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484, 639 N.E.2d 1282 (1994). Conversely, the primary basis for a section 2—619 motion is to alert the court to affirmative matter that defeats the claim or operates to avoid its legal effect. 735 ILCS 5/2—619 (West 1994); *Nickum*, 159 Ill. 2d at 485. Because collateral estoppel operates to bar a legally recognized claim, it is properly asserted in a motion under section 2—619. 735 ILCS 5/2—619(a)(4) (West 1994); see *Nagy v. Beckley*, 218 Ill. App. 3d 875, 883, 578 N.E.2d 1134 (1991); *Smith v. Chemical Personnel Search, Inc.*, 215 Ill. App. 3d 1078, 1081, 576 N.E.2d 340 (1991).

It has been held, however, that where an affirmative defense is apparent from the face of the complaint, it is a proper subject for a section 2—615 motion. See *Summers v. Village of Durand*, 267 Ill. App. 3d 767, 643 N.E.2d 272 (1994); *Boonstra v. City of Chicago*, 214 Ill. App. 3d 379, 574 N.E.2d 689 (1991); *Thomas v. Petrulis*, 125 Ill. App. 3d 415, 465 N.E.2d 1059 (1984). In such cases, the motion must specifically point out the defect of which the movant complains. See *People ex rel. Casey v. Health & Hospitals Governing Comm'n*, 69 Ill. 2d 108, 113, 370 N.E.2d 499 (1977).

Grasso argues that dismissal of the counterclaim under section 2—615 was proper because the basis for his affirmative defense was apparent from the face of the pleadings; specifically, Sarno had incorporated the bankruptcy decision, including factual findings barring the malpractice claim, into her complaint. We note that, in addition to being incorporated into Sarno's complaint, the bankruptcy decision was also pled in EMP's counterclaim: it formed the basis of the malpractice action, and the counterclaim set forth the bankruptcy hearing dates and generally described the court's findings. This is sufficient under Supreme Court Rule 133 to properly plead an underlying judgment. See 134 Ill. 2d R. 133(b).

Nonetheless, as we state below, we do not agree that the defense of collateral estoppel was apparent from the face of the pleadings in this case.

■ Collateral estoppel is an equitable doctrine, the application of which is governed by principles of equity and fairness. *Herzog v. Lexington Township*, 167 Ill. 2d 288, 294-95, 657 N.E.2d 926 (1995); *LaHood v. Couri*, 236 Ill. App. 3d 641, 646, 603 N.E.2d 1165 (1992). In order for the doctrine to apply, the party invoking it must establish (1) that the issue decided in the prior adjudication was identical to the one presented in the suit in question; (2) that there was a final judgment on the merits in the prior adjudication; (3) that the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) that the factual issue against which the doctrine is interposed has actually and necessarily been decided in the prior action. *Housing Authority v. Young Men's Christian Ass'n*, 101 Ill. 2d 246, 252, 461 N.E.2d 959 (1984). The party raising collateral estoppel bears the burden of showing with clarity and certainty what was determined by the prior judgment. *LaHood*, 236 Ill. App. 3d at 646; *Benton v. Smith*, 157 Ill. App. 3d 847, 510 N.E.2d 952 (1987).

■ Even if the above elements are found to be proven, collateral estoppel will not be applied if unfairness or manifest injustice would result. *S&S Automotive v. Checker Taxi Co.*, 166 Ill. App. 3d 6, 10, 520 N.E.2d 929 (1988). Before applying the doctrine, the court must ascertain that the party against whom it is asserted had a full and fair opportunity as well as an incentive to litigate the issue in the prior proceeding. *Cleveringa v. J.I. Case Co.*, 230 Ill. App. 3d 831, 848, 595 N.E.2d 1193 (1992); see also *Housing Authority*, 101 Ill. 2d 246, 461 N.E.2d 959.

The relevant findings of the bankruptcy court were as follows. The court unequivocally concluded that Grasso had provided each of the creditors with incompetent representation in the pursuit of the bankruptcy action. The court noted, in particular, that Grasso neglected to reasonably inquire into the existence of the elements necessary for filing an involuntary petition. *In re Better Care*, 97 B.R. at 412.

Notwithstanding this, however, the court also found that the creditors' conduct constituted bad faith under the "improper purpose" test; that is, they were motivated purely by personal malice or an intention to embarrass or harass the debtor. *In re Better Care*, 97 B.R. at 410. The court observed that Akkeron had made futile attempts to wrest control of Better Care from Sarno and that he filed the bankruptcy petition because Sarno had failed to capitulate to his demands. With regard to EMP, the court concluded that, in addition to having a desire to go along with the wishes of Akkeron, a valued client, EMP joined as a petitioning creditor out of anger towards Sarno for terminating EMP's accounting services.

The court noted that in certain cases, in the absence of evidence of malice, reliance upon the advice of counsel in filing a bankruptcy action could suffice to preclude a finding of bad faith. *In re Better Care*, 97 B.R. at 412, citing *In re Wavelength Inc.*, 61 B.R. 614 (B.A.P. 9th Cir. 1986), and *In re Advance Press & Litho, Inc.*, 46 B.R. 700 (Bankr. D. Colo. 1984). However, it went on to conclude that such a defense was not available in the instant case. Each of the creditors wanted to destroy Sarno's business and filed the petition "wholly independently" of Grasso's advice. *In re Better Care*, 97 B.R. at 412-13.

■ Applying the elements necessary for a finding of collateral estoppel, we conclude that EMP lacked a full and fair opportunity in the bankruptcy proceedings to adjudicate its claims against Grasso. According to the counterclaim, Grasso solicited EMP's participation in the filing, representing that it was an appropriate means to collect the outstanding debt that Better Care owed EMP. Grasso allegedly failed to inform EMP that the petition was without legal or factual basis and neglected to advise it regarding the risks inherent in the filing.

Critically absent from the pleadings in this case is any statement as to whether or not Grasso served as EMP's counsel during the resolution of the bad-faith issue. If, as EMP asserts in its brief on appeal, Grasso was EMP's counsel, EMP clearly lacked both the opportunity and the incentive to adjudicate its claim against Grasso at that stage of the proceedings.

First, EMP lacked any incentive to assert a claim at that point. Grasso appeared to be effectively representing its interests when he took the stand in the bankruptcy proceedings and admitted that the creditors filed the petition in reliance on his advice.

At the same time, however, it was neither necessary nor in Grasso's interest to expound upon his own negligence or to provide details regarding his representation of EMP in particular. There appears to have been very little consideration by the bankruptcy court regarding the content of Grasso's erroneous advice to EMP or the role that advice played in EMP's decision to participate in the bankruptcy filing in the first instance. Indeed, the bankruptcy opinion states that, at the commencement of the bad-faith hearing, the parties waived submission of any new evidence beyond that presented on the petition itself. *In re Better Care*, 97 B.R. at 409. It was not until the November 1988 hearing on damages that the creditors first submitted Grasso's testimony, which apparently consisted of scarcely more than his statement that the petition was filed "on his advice."

After considering the limited facts before us, we are unable to conclude that the bankruptcy determination could equitably be used

as a bar to EMP's malpractice claim against Grasso. Grasso was found to be inept in his representation of EMP in those proceedings. Further, if Grasso in fact represented EMP at the bad-faith hearing, he labored under a clear conflict of interest, as the court's determination was contingent upon a finding of his own negligence. As such, a factual issue remains with regard to whether EMP had a full and fair opportunity to litigate the bad-faith issue before the bankruptcy court.

As an alternative basis for dismissal, the trial court found that the bankruptcy decision operated to bar EMP's counterclaim under the doctrine of unclean hands.

In *Buttitta v. Newell*, 176 Ill. App. 3d 880, 531 N.E.2d 957 (1988), and *Makela v. Roach*, 142 Ill. App. 3d 827, 492 N.E.2d 191 (1986), this court held that where a party voluntarily elects to follow advice intended to extricate himself from a questionable situation, he has unclean hands and may not seek relief through a subsequent malpractice action.

We find the situation at bar more readily analogous to the case of *Bucci v. Rustin*, 227 Ill. App. 3d 779, 592 N.E.2d 297 (1992). In that malpractice case, the attorney failed to put on any defense in the underlying action, and this resulted in his client being found liable for fraud. In reversing the dismissal of the client's malpractice claim, this court found the above rule inapplicable, because the attorney's malpractice drew the underlying determination itself into question.

Similarly, if Grasso represented EMP at the bad-faith hearing, that hearing was rooted in a conflict of interest. We are unable to state that EMP had a fair opportunity to defend itself against the charge of bad faith and, thus, cannot apply unclean hands in this case.

EMP additionally argues that its counterclaim stated legally sufficient claims against Grasso for legal malpractice. We decline to address this issue, however, because it was never considered by the trial court. Rather, the sole basis for the dismissal of EMP's claim was the preclusive effect of the bankruptcy decision. Thus, we reverse the dismissal and remand the matter to the circuit court for an initial determination as to the legal sufficiency of the counterclaim.

For the foregoing reasons, the dismissal of EMP's counterclaim is reversed and this case remanded for further proceedings.

Reversed and remanded.

HARTMAN, P.J., and HOURIHANE, J., concur.