**Ray HANANIA and Allison Resnick, Plaintiffs,**

v.

**Betty LOREN–MALTESE, individually and in her official capacity as President of the Town of Cicero, Town of Cicero, the Cicero Town News, Cicero Town Republican Organization, the Cicero Observer, Board Trustees Michael Frederick, Ruperto Alejandro, Moises Zayas, John Kociolko, Joseph Virruso, Richard Smetana, and Jan Porod, individually and in their official capacities as, Jerome Torshen, and Torshen, Spreyer & Garmisa, Ltd., Defendant.**

No. 98 C 5232.

United States District Court,
N.D. Illinois,
Eastern Division.

May 12, 1999.

well's presence in the suit should stand in the way of transfer.

Jonathan I. Loevy, Arthur R. Loevy, Chicago, IL, for Plaintiffs.

Terence Patrick Gillespie, Genson, Steinback & Gillespie, Chicago, IL, Sally H. Saltzberg, P. Michael Loftus, Loftus & Saltzberg, P.C., Chicago, IL, Michael Andrew Ficaro, Ross Edward Kimbarovsky, Hopkins & Sutter, P.C., Chicago, IL, for . Defendants.

### MEMORANDUM AND ORDER

MORAN, Senior District Judge.

Alison Resnick was the Cicero Town Collector and Ray Hanania, now her husband, was the Cicero town spokesman.

They now sue the Town of Cicero; its President, Loren–Maltese; the members of the Board of Trustees; the Town of Cicero newsletter, The Cicero Town News; the Cicero Town Republican Organization, and its newsletter, The Cicero Town Observer (the Cicero defendants); and also Resnick's former attorneys, Jerome Torshen and Torshen, Spreyer, Garmisa & Slobig, Ltd. (the Torshen defendants). All defendants move to dismiss on a variety of grounds. The complaint and the briefs total more than 200 pages. Even so, many issues remain undeveloped and the multitude of issues creates some uncertainty that we will adequately deal with all of them. It may well be that we will have to consider some of them again. We are also mindful that the complaint reads somewhat like an exercise in investigative journalism and contains many irrelevancies, *e.g.*, "It was widely believed..." and "It was also widely rumored..." (par. 36a), and that all parties have tended to introduce facts into their arguments that are not alleged in the complaint.

We turn, then, to a rather detailed recitation of the allegations of the complaint. Hanania was the "Cicero town spokesman" (which we understand to be the press secretary or media representative for the town) from 1993 to the fall of 1996. That fall a newspaper reported on an FBI investigation into alleged wrongdoing by Loren–Maltese in connection with a major insurance carrier for the town. Hanania urged her to explain that situation publicly (par. 21) and refused to defend or make excuses to the media about rampant corruption in the administration (par. 11), and she fired him on the spot on October 28, 1996. The following day Resnick asked Loren–Maltese at a meeting of the Board of Trustees to explain her involvement in the insurance matter, but she declined to do so. That same day Hanania and others contacted the Cook County State's Attorney's office about their suspicions. Shortly thereafter Resnick and another Cicero trustee introduced a resolution before the Board to request an investigation by the States Attorney. Loren–Maltese, instead, announced that she planned to hire a private attorney to conduct an investigation. Resnick objected.

Resnick was the Town Collector from February 1996 until the end of 1997. She was slated for that post for the April 1997 election, but was dropped from the ticket in November 1996, shortly after she introduced the resolution, for refusing to remain quiet about corruption in the administration. Resnick then, with others, formed an opposition slate known as the Restore Honesty in Cicero party (RHC), which lost in the February 1997 Republican primary. During the campaign Resnick, Hanania and others accused Loren–Maltese and her allies of wrongdoing, much of it of a criminal nature. The complaint describes sixteen instances of alleged corruption and other transgressions they talked about during that period. Beginning in December 1996, Loren–Maltese and the Board, which she controlled, began to retaliate. They eliminated the Town Collector's authority over business and pet licenses. Loren–Maltese, from December on, refused to accept the monthly statements submitted by Resnick. In May 1997 the Town Collector's operation was moved to smaller and inadequate quarters and Resnick was denied access to various files and equipment. Her responsibilities were transferred to the Collector-elect, and on June 2 two of her three employees were terminated.

Two days later, with the Torshen defendants as her lawyers, Resnick obtained a temporary restraining order in a state court chancery action enjoining Loren–Maltese from taking any action that impeded Resnick in the performance of her duties and requiring the retention of the two terminated employees. That order was thereafter extended. The Board then, at Loren–Maltese's direction, eliminated the two positions and passed eight ordinances on June 10, 1997, that effectively transferred collection responsibilities from

the Town Collector to the Treasurer, an ally of Loren–Maltese. That led Judge Foreman, the chancery judge, to issue a rule-to-show-cause order a week later. In the meantime, Loren–Maltese had successfully avoided appearing for a deposition, and her deposition date and the response date for the rule to show cause were continued from time to time thereafter. A petition for limitation of the scope of discovery was denied August 11.

About that time Torshen advised Resnick that he had worked out a settlement. If she signed, Loren–Maltese had promised to allow her to complete her term without further interference. Torshen promised to defend her if Cicero sued her. He told her all agreed that it would be best if she stayed away from the bi-monthly Board meetings. On August 20, 1997, Resnick signed the settlement agreement, although it was materially different from the prior draft, and the suit was dismissed the following day. Apparently matters went on relatively smoothly for awhile. The complaint indicates that her duties remained restricted but that she had two employees and prepared monthly statements as best she could. Then, on December 9, 1997, three weeks before the end of her term, the Board declared a vacancy in the Town Collector's position and filled it, due to Resnick's "excessive unexcused absences" from Board meetings. That cost her three weeks salary plus three weeks accrued vacation time. She called Torshen, who negotiated two weeks vacation pay, and said there was nothing else he could do. At about the same time Cicero entered into a consent decree with the federal government to settle a housing discrimination suit brought by the Housing and Civil Enforcement Section of the Department of Justice. A Cicero press release on December 9, 1997, falsely stated that Judge Zagel had indicated Cicero would have been granted summary judgment but for a discriminatory comment attributed to Resnick. The Cicero Town News repeated that substance several times in late 1997 and in 1998, and Loren–

Maltese included it in a special mailer distributed July 2, 1998. In 1997 The Cicero Observer falsely stated that Hanania, in a lawsuit between Loren–Maltese's party and the RHC slate, "lied on the stand, under oath, committing perjury." The complaint alleges two other false statements as well.

From these allegations plaintiffs advance nine claims. Before discussing each of the claims, we believe the relationship between the plaintiffs and the Torshen defendants requires some additional explanation. The settlement agreement is not attached to the complaint but it is referred to therein, and plaintiffs include it as an exhibit in one of their filings. Among other provisions it states as follows: "2. Plaintiff shall serve out her Term as Town Collector through December 31, 1997. She shall come to work and Board Meetings as appropriate and assist in the transition of her elected successor, whose Term commences January 1, 1998. She shall perform all the duties and functions of her appointive Office." In a subsequent paragraph Cicero agrees to refer to the Torshen firm its defense in what appears to be a wrongful death lawsuit. Plaintiffs assert that this was a payoff and that Resnick only owed about $1200 at the time. The Torshen defendants assert that they were owed about $40,000, that Resnick could not pay, that Cicero refused to pay Resnick's fees as part of the settlement, and the referral (which was discussed with Resnick) was a way to get the fees paid without expense to Resnick. Both are unverified assertions not alleged in the complaint, and neither is relied upon here.

In Count I, based upon 42 U.S.C. § 1983, plaintiffs allege that the Cicero defendants (but not including the Cicero Town Republican Organization) retaliated against them because of their exercise of their free speech rights. Those defendants move to dismiss for several reasons. They argue that the Town of Cicero must

be out because plaintiffs have not sufficiently alleged an official policy or custom; that the speech related to personal disputes and, in Hanania's case, to a private disagreement over job performance; that Resnick was removed from office for failure to attend Board meetings; that even if the speech involved matters of public concern, the interests of Cicero in the efficiency of its public services trumps plaintiffs' interests; that defamation is not of constitutional significance; that The Cicero Town News and The Cicero Observer are not legal entities; that all individual Cicero defendants are entitled to absolute or qualified immunity; and that Resnick is barred from § 1983 recovery by the doctrine of collateral estoppel.

 Some of those contentions need be only briefly discussed; others are more problematic. We believe that allegations of retaliation by both the town president and the Board trustees, the official policy makers of Cicero, provide a sufficient basis for asserting municipal liability. A § 1983 claim is not subject to a heightened pleading standard. *Sledd v. Lindsay*, 102 F.3d 282, 288–89 (7th Cir.1996). The claims of political corruption clearly are related to matters of public concern. The disclosure of crime is a matter of great public concern. *Gorman v. Robinson*, 977 F.2d 350, 355 (7th Cir.1992). Hanania's speech (or non-speech) is less obviously about matters of public concern, but whether or not the president of Cicero was going to respond to charges of political corruption could be a matter of public concern, and that is enough for now. *Gustafson v. Jones*, 117 F.3d 1015, 1018–19 (7th Cir.1997). And if it is such, the fact that it was privately expressed does not negate protection. *Givhan v. Western Line Consol. School District*, 439 U.S. 410, 415 fn. 4, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979). Defendants say Resnick was removed from office for failure to attend Board meetings, but she

claims that was a pretext, and we cannot decide who is right on a motion to dismiss. While we have no reason to doubt that The Cicero Town News and The Cicero Observer are not legal entities, we cannot dismiss them solely on the say-so of attorneys in a brief.

 On the other hand, Hanania has alleged a § 1983 claim based on defamation. As he recognized, defamation does not become a constitutional tort unless the governmental libel so impugns or stigmatizes his reputation as to inhibit future employment opportunities. He suggests, in plaintiffs' response, that it so happened here, but he does not so allege in his complaint and we look solely to the allegations of the complaint in ruling upon a motion to dismiss. We grant, of course, leave to amend.

 That leaves three issues respecting Count I unresolved. One is immunity. We see no basis for qualified immunity. Retaliatory harassment and deprivation of employment in 1996 and 1997 violated clearly-established rights. Defendants are not entitled to qualified immunity. Termination is ordinarily an administrative matter, and there is no absolute immunity with respect to Hanania's termination. But the alleged means of harassing Resnick and then ending her tenure were, at least in part, through the enactment of legislation. Ordinarily a state or regional legislator cannot be called upon in court to answer for his or her vote on a particular measure. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 403, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). But here the legislation is local and plaintiffs allege in substance that this was special legislation specifically tailored to affect only Resnick. For now we do not dismiss on the basis of absolute legislative immunity, but it is a subject that needs to be revisited.[1]

---

1. We are here dealing with federal, rather than state, concepts of legislative immunity,

as defendants recognize.

Another open issue is that of collateral estoppel. All matters complained of that occurred after the date of the settlement agreement survive for now, although the acceptance of the two weeks vacation pay may ultimately be determined to be an accord and satisfaction. But what about the matters prior to the settlement agreement? The chancery action sought to void the June 10 ordinances but it also sought to enjoin interference with Resnick's operation, with an emphasis upon the reduction in her staff, interference she attributed to her political campaign and efforts to uncover financial wrongdoings in Cicero. That case was settled, and we have serious doubts that those claims can be resurrected. After all, Resnick signed the settlement agreement and the complaint does not indicate that she suffers any disabilities. Still, collateral estoppel is an equitable doctrine, the application of which is governed by principles of equity and fairness. We must determine that Resnick had a full and fair opportunity, as well as an incentive, to litigate the issue in the prior proceeding. *Sarno v. Akkeron*, 292 Ill.App.3d 80, 225 Ill.Dec. 973, 684 N.E.2d 964, 968 (Ill.App.1st 1997).[2] She alleges she did not, and we cannot determine to the contrary on a motion to dismiss.

The third and final issue respecting the motion to dismiss Count I relates to the application of the *Pickering/Connick* balancing test, and here again we deny the motion for now, but with a recognition that the issue must be revisited.

Resnick was not an employee but we do not believe that materially changes the analysis. *See Board of County Commissioners, Wabaunsee County, Kan. v. Umbehr*, 518 U.S. 668, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996). If Loren–Maltese and the Board trustees were involved in public corruption, that was a matter of heightened public concern, *Gorman v. Robinson*, 977 F.2d at 355, and, in applying the *Pickering/Connick* balancing, the greater the

public concern the greater the need to justify restrictions. *Givhan v. Western Line Consolidated School District, supra; Jefferson v. Ambroz*, 90 F.3d 1291 (7th Cir.1996); *Kukla v. Village of Antioch*, 647 F.Supp. 799 (N.D.Ill.1986). But what if plaintiffs were lying about Loren–Maltese and the Board trustees, or were negligently or innocently in error? Their speech in those circumstances does not survive a *Pickering/Connick* analysis. *Wright v. Illinois Dept. of Children & Family Services*, 40 F.3d 1492, 1505 (7th Cir.1994); *American Postal Workers Union v. U.S. Postal Service*, 830 F.2d 294 (D.C.Cir. 1987). The same is true when the employer reasonably believes that the employee has engaged in highly disruptive and false speech. *Waters v. Churchill*, 511 U.S. 661, 681, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994). But here Loren–Maltese certainly knew, and the other individual defendants probably knew, whether plaintiffs' accusations were or were not substantially accurate.

Accurate or not, that speech is highly disruptive. Does the Constitution require that the chief executive officer of a municipality continue the services of its press agent when he indicates that he thinks that officer has a lot to explain with respect to a public scandal? Have that officer and the trustees an obligation to continue to work with a fellow highly-placed official who continually accuses them of being involved in all sorts of corruption? *Chateaubriand v. Gaspard*, 97 F.3d 1218 (9th Cir.1996), suggests yes, but without a *Pickering/Connick* analysis. *Breuer v. Hart*, 909 F.2d 1035 (7th Cir. 1990), looks the other way. *See also Germann v. City of Kansas City*, 776 F.2d 761 (8th Cir.1985), *cert. denied* 479 U.S. 813, 107 S.Ct. 63, 93 L.Ed.2d 22 (1986). We are mindful, as well, that most of plaintiffs' charges arose in the context of a political campaign, and it is well established that the winner of a political campaign need not

---

**2.** We assume that Illinois law controls with respect to the collateral estoppel issue as it

relates to the federal claim in Count I, no contrary contention having been advanced.

continue the services of political opponents occupying positions involving the exercise of policy formulation and enforcement, and significant discretion. *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). Perhaps we should recognize how disruptive such charges can be and permit the termination of the relationship unless the speaker can demonstrate that he or she had substantial, even compelling, evidence of defendants' corruption at the time of the speech. But we leave that for another day. For now, we cannot say we are persuaded that plaintiffs cannot establish a § 1983 violation on the basis of any facts they may present. The motion to dismiss Count I is denied.

■ Count II recasts Count I as a conspiracy and is directed toward all defendants. The Torshen defendants move to dismiss on several grounds. We choose to discuss but one and, because we believe it dispositive, we grant the motion. Plaintiffs claim that the Torshen defendants entered into a conspiracy with the Cicero defendants. The parties agree, as they must, that private actors can be liable for violations of § 1983 by participating with state actors in a conspiracy to deprive another of her civil rights. But plaintiffs must allege, in a meaningful way, that the Torshen defendants participated in such a conspiracy, and the complaint does not so allege.

The Cicero defendants are alleged in Count I to have retaliated against the plaintiffs because of their exercise of protected speech. That, according to the plaintiffs, was the Cicero defendants' common purpose. As criminal instruction 5.08 of the Seventh Circuit Criminal Jury Instructions indicates, the Torshen defendants, to be co-conspirators, had to be aware of that common purpose and become a willing participant to further that common purpose. The allegations of the complaint do not nearly go so far. Plaintiffs concede that the Torshen defendants ably represented Resnick until shortly before the case was settled. They claim that their lawyers then, in effect, sold them out by urging acceptance of a settlement not in Resnick's best interests, in order that they could recover their fees. They argue that Resnick obtained nothing from the settlement.

We do not comment here about the ethics of the referral arrangement in the settlement agreement, or whether there was a breach of fiduciary obligations. We do note, however, that the settlement provided the relief that was the original purpose of the chancery action, that Resnick could finish out her term without interference. The complaint indicates that the Cicero defendants abided by that settlement until three weeks before the expiration of Resnick's term. When the vacancy was declared, Torshen obtained one concession: two weeks vacation pay. Although Resnick does not allege that she requested him to represent her again by, for example, seeking reopening of the chancery action before Judge Foreman, we recognize that Torshen's subsequent representation (which included another case in which the Torshen defendants represented the counsel of the Town of Cicero in a suit arising out of his performance as Town counsel) probably foreclosed their renewed representation of Resnick. We recognize, as well, that conspirators may have differing motives for their participation. But the allegations here do not and cannot support a conclusion that the Torshen defendants were voluntary participants in a common venture to retaliate against Resnick because of her exercise of protected speech.

■ That does not, however, mean that the other defendants' motion to dismiss Count II can be granted. There can be no intra-corporate conspiracy if the only defendants are the Town of Cicero and its officials, *Wright v. Illinois Dept. of Children & Family Services,* 40 F.3d 1492, 1508–09 (7th Cir.1994), but we still have The Cicero Town Observer and the Cicero Town Republican Organization as defendants, and they are separate from the Town of Cicero. The motion of the defen-

dants other than the Torshen defendants is, for now, denied.

■ Other Torshen defendants' motions remain. One is a motion for Rule 11 sanctions. That we deny. Plaintiffs do not allege that the referral provision in the settlement agreement was "secret," although they do point out, correctly, that the Torshen defendants later did pick up the Town counsel as a client. The claims against the Torshen defendants do involve state actors; Town counsel acted as an agent for his client in entering into the settlement agreement. And while the conspiracy theory is a stretch, we do not believe it transgresses Rule 11. The Torshen defendants' motion to dismiss Count VI and Count VII, and to dismiss them from Count II, Count V and Count IX is granted. The federal counts having been dismissed, we dismiss the state law claims without prejudice. Finally, plaintiffs agree that we should dismiss Count IV as to all defendants, and we do so.

■ That leaves the Cicero defendants' motions to dismiss the state law claims. Those motions raise, initially, questions of state law immunity. With respect to all state claims defendants rely upon 745 ILCS 10/2–201. With respect to the defamation claims they rely, as well, upon 745 ILCS 10/2–107, and Loren–Maltese also relies upon a common law executive privilege.

At this point we are left with the conclusion that the scope of Illinois immunity has not been sufficiently developed by the parties for this court to be comfortable in dismissing claims on those grounds. Accordingly, the claims of Illinois immunity are, for now, (with one exception) denied, but, again, this is a matter to be revisited.

■ Defendants raise their 10/2–201 defense in the last paragraph of their brief. That section provides that a "public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." Defendants assert that Loren–Maltese and the Board were acting within the ambit of that provision. Plaintiffs suggest that those defendants are not "employees," relying only on an argument by defendants in a different context. 75 ILCS 10/1–202 makes it clear that these defendants are employees for the purposes of the statute. They also contend that the defamation was not a discretionary act or a policy decision, relying upon *Stratman v. Brent,* 291 Ill. App.3d 123, 225 Ill.Dec. 448, 683 N.E.2d 951, 955 (Ill.App.2d 1997). We agree that the alleged defamations here were not necessarily discretionary acts within the coverage of 10/2–201. Moreover, that provision does not necessarily provide immunity for the conduct relating to the restrictions upon Resnick and her ultimate ouster. Further, 10/2–201 does not protect the defendants if their acts were based on corrupt or malicious motives. *Youker v. Schoenenberger,* 22 F.3d 163, 168 (7th Cir. 1994); *Abbott v. Village of Winthrop Harbor,* 953 F.Supp. 931 (N.D.Ill.1996); *Idlehour Development Co. v. City of St. Charles,* 88 Ill.App.3d 47, 42 Ill.Dec. 929, 409 N.E.2d 544 (Ill.App.2d 1980). To be sure, boilerplate accusatory language alone is not enough, *Youker v. Schoenenberger, supra,* but plaintiffs go well beyond that in alleging what happened and why the acts were corrupt and malicious. That does not, however, end the inquiry. 745 ILCS 10/2–205 provides a strong basis for contending that the passage of the June 10 ordinances cannot lead to liability—a statutory recognition of legislative immunity—and it was so interpreted in *Carter v. City of Elmwood, Peoria County,* 162 Ill.App.3d 235, 113 Ill.Dec. 606, 515 N.E.2d 415, 416 (Ill.App.3d 1987). On the other hand, that provision was not even addressed in *Idlehour Development v. City of St., Charles, supra,* and *Madonna v. Giacobbe,* 190 Ill. App.3d 859, 138 Ill.Dec. 90, 546 N.E.2d 1145 (Ill.App.2d 1989), appears to except from its protection legislative action stem-

ming from corrupt or evil motives. We leave further consideration to another day.

Given that determination, or, more properly, lack of determination, the motions respecting various of the counts can be resolved in short order. We deny the motion to dismiss Count III. If plaintiffs have, for now, escaped a motion to dismiss Count II, we are not given any separate and independent reason why the Illinois conspiracy claim must fail. The Count V intentional infliction of emotional distress claim also survives. We agree with defendants that this Illinois tort reaches only extreme and outrageous conduct, and that the threshold is high. Still, we are dealing with a motion to dismiss, *see Cromley v. Board of Education of Lockport*, 699 F.Supp. 1283, 1300 (N.D.Ill.1988). While the conduct alleged here and its consequences do not rise to the level described in *Johnson v. Federal Reserve Bank of Chicago*, 199 Ill.App.3d 427, 145 Ill.Dec. 558, 557 N.E.2d 328 (Ill.App.1st 1990), we believe it premature to dismiss.

One other immunity provision is relevant. 75 ILCS 10/2–107 provides that a public entity is not liable for its employees' libels and slanders. Plaintiffs give us no reason why the Town of Cicero should not be protected by that section. Unlike the legislative immunity provisions, however, where protection is granted to the public entity in one section (10/2–103) and to public employees in another (10/2–205), 10/2–107 has an analog protecting public employees only for negligent misrepresentations, 10/2–210. Defendants also rely upon a common law privilege protecting Loren–Maltese from liability, contending that the alleged defamations were legitimately related to matters committed to her responsibility. *Blair v. Walker*, 64 Ill.2d 1, 349 N.E.2d 385, 389 (Ill.1976). We have no doubt that the privilege extends to a municipal official in Loren–Maltese's position. *See Ware v. Carey*, 75 Ill.App.3d 906, 31 Ill.Dec. 488, 394 N.E.2d 690 (Ill. App.1st 1979). It is an absolute privilege according to *Blair v. Walker, supra*, which

means that it is not lost even though published with actual malice, that the defendant knew the statement was false or published it with reckless disregard for its truth or falsity, *Ware v. Carey, supra*, or had an improper motive, *Morton v. Hartigan*, 145 Ill.App.3d 417, 99 Ill.Dec. 424, 495 N.E.2d 1159 (Ill.App.1st 1986). It is, therefore, unlike privileges arising from a duty to disclose, *see, Zeinfeld v. Hayes Freight Lines, Inc.*, 41 Ill.2d 345, 243 N.E.2d 217 (Ill.1968), or from the reporting of government action, *see Lulay v. Peoria Journal–Star, Inc.*, 34 Ill.2d 112, 214 N.E.2d 746 (Ill.1966).

That privilege extends, however, only to defamations within the scope of her duties. *Blair v. Walker, supra*. Here the plaintiffs allege that a press release on December 9, 1997, that they attribute to Loren–Maltese, stated that Judge Zagel had indicated that he would have thrown out a federal government fair housing case against Cicero had it not been for comments by Resnick, a statement plaintiffs characterize as false and malicious. Virtually identical statements, they allege, were made in The Cicero Town News on several occasions in late 1997 and 1998, including one in the July 1998 edition (printed in five languages), where it was stated that Judge Zagel blamed the entire housing litigation situation on Resnick. Substantially the same statement was made in a July 2, 1998 mailer distributed by Loren–Maltese. She also is alleged to have defamed Hanania in 1997 by falsely accusing him of ordering the misuse of Town monies in connection with typesetting printing costs for The Cicero Observer.

Are those reports within the outer reaches of her duties? Perhaps they are, although it is difficult to see any reason for repeating accusations long after Resnick left her position as collector. But whether they are or are not is something we can not determine in a motion to dismiss. The immunity defenses are, for now, denied.

Defendants go on to attack the defamation claims on other grounds. They insist

that the precise language of the alleged libels must be pleaded and that it has not been, that the allegations of who to whom, when and where, are insufficient, and that the special damages have not been specified as they must be if plaintiffs are claiming defamation *per quod.*

We think the allegations respecting the housing litigation defamations are sufficient. Loren–Maltese certainly should have no difficulty in responding to those claims. *See Vantassell–Matin v. Nelson,* 741 F.Supp. 698 (N.D.Ill.1990). We agree, though, that the allegations respecting reports in The Cicero Observer and the Loren–Maltese accusation against Hanania require more specificity than "in 1997," "printed false statements," and "falsely accused." We dismiss paragraphs 151, 152 and 153, but with leave to amend. Further, we dismiss the reference in paragraph 155 to special damages. Such damages must be specifically stated. Fed. R.Civ.P. 9(g); *King v. Armstrong,* 623 F.Supp. 487 (N.D.Ill.1985).

Defendants also contend that the references to Judge Zagel's opinion were substantially true, and they furnish a copy. Plaintiffs object to consideration of the opinion, contending that it converts the motion to one for summary judgment. We disagree, since plaintiffs reference the opinion in their allegations. They are on sounder ground in contending that the references are not a substantially true characterization of the opinion. We deny the motion to dismiss based on the claim the gist of the statements is substantially true. *Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222, 1228 (7th Cir.1993), or that they are a fair summary, *Emery v. Kimball Hill, Inc.,* 112 Ill.App.3d 109, 67 Ill.Dec. 767, 445 N.E.2d 59, 61 (Ill.App.2d 1983).

The motion to dismiss Count IX is denied. Plaintiffs do not suggest that the Town of Cicero would not honor its statutory indemnification obligations if compensatory damages judgments were entered against its employees. The circumstances here are, therefore, somewhat different from those in *Wilson v. City of Chicago,* 120 F.3d 681 (7th Cir.1997), but not different enough. What was done there is what has been done here, the invocation of ancillary jurisdiction to bring "a prejudgment collection proceeding, an effort to bring into the case a solvent party to pay the judgment against an insolvent one." *Id.* at 684. Obviously Count IX comes into play only if a judgment is entered against an employee to whom the municipality has an indemnification obligation, but, according to *Wilson,* plaintiffs need not wait until judgment is entered.

Defendants seek to strike the punitive damages claims in Counts I and II because the Town of Cicero cannot be liable for punitive damages. That is true enough and, accordingly, we strike them insofar as they relate to the municipality. They remain as damages claims against the individual defendants.

Finally, defendants complain that plaintiffs have alleged much that is unnecessary, argumentative and unanswerable; they include a number of such comments in an appendix; and they ask that they be stricken. They are right about most of them but not about the allegations that Loren–Maltese controls the content of The Cicero Town News and appoints all trustees. And there are other irrelevant allegations as well, one mentioned before. Other examples are the references to alleged pending investigations in subparagraphs 36(d) and 36(e), 36(j) and 36(*l*). We could direct the plaintiffs to amend, so as to drop out the editorializing, but we do not think that worth the effort. Rather, we ask the defendants to answer all relevant allegations (and the great bulk of them are relevant to plaintiffs' claims). We recognize that the jury does not see the pleadings and the real issues are generally not fully crystalized until the final pretrial order. For now, we deny the Rule 12(f) motion to strike.

## CONCLUSION

The motion of the Cicero defendants to dismiss Count I is denied. The motion of the Torshen defendants to dismiss Count II is granted, but the motion of the Cicero defendants to dismiss that count is denied. The motion of the Torshen defendants for Rule 11 sanctions is denied. Their motion to dismiss Counts VI and VII and to dismiss them from Count II, Count V and Count IX is granted. Count IV is dismissed. We deny the motion of the Cicero defendants to dismiss Count III and Count V. The motion of the Town of Cicero to dismiss Count VIII is granted. The motion of the Cicero defendants to dismiss Count VIII is granted in part and denied in part. The motion of the Cicero defendants to dismiss Count IX is denied. The motion of the Town of Cicero to strike the punitive damages claims against it in Counts I and II is granted. We conditionally deny the Rule 12(f) motion to strike.